**GREENSTONE LAW APC**
Mark S. Greenstone (SBN 199606*)*
Benjamin N. Donahue (*pro hac vice forthcoming*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
Email: mgreenstone@greenstonelaw.com
Email: bdonahue@greenstonelaw.com

**GLANCY PRONGAY & MURRAY LLP**
Marc L. Godino (SBN 182689)
David J. Stone (SBN 208961)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: kruf@glancylaw.com
Email: mgodino@glancylaw.com
Email: dstone@glancylaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRI LARSON, JAMESON JAUKEN, CHARLES KADLUBOWSKI, GEORGE WERNER, MARTHA VELASQUEZ, JUDITH CALEO, DAVID JOSEPHSON, ADAM BARKSDALE, CAROL HARDIFER, CARMINE D'AMATO, DAVID KORMAN CAROL ALLEN, CATHERINE DAVIS, STACY REISER, SUNGWON HAN, ARIKA KUHLMANN, and RIC HEATON, Individually and On Behalf of All Others Similarly Situated, | Case No. 3:23-cv-01238-L-BGS<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs,

v.

AMERICAN HONDA MOTOR
COMPANY, INC., a California
corporation, and HONDA MOTOR
COMPANY, LTD, a foreign
corporation,

Defendants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   <u>INTRODUCTION</u>

1.     Plaintiffs Terri Larson, Jameson Jauken, Charles Kadlubowski, George Werner, Martha Velasquez, Judith Caleo, David Josephson, Adam Barksdale, Carol Hardifer, Carmine D'Amato, David Korman, Carol Allen, Catherine Davis, Stacy Reiser, Sungwon Han, Arika Kuhlmann and Ric Heaton ("Plaintiffs") bring this action individually and on behalf of all similarly situated persons in the United States ("Class Members") who purchased or leased any 2012-2014 Honda CR-V vehicle with a 2.4 liter engine, 2012 Honda Accord vehicle with an L4 engine, or 2012-2015 Honda Crosstour vehicle with an L4 engine (collectively, the "Class Vehicles") that were designed, manufactured, distributed, marketed, sold, and leased by Defendants American Honda Motor Company, Inc. and Honda Motor Company, Ltd. ("Defendants" or "Honda"). Plaintiffs allege as follows upon personal knowledge as to themselves and their experience, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2.     Prior to sale Defendants knew that the Class Vehicles contain one or more defects in their Variable Timing Control ("VTC") Actuator, Honda part no. 14310-R44-A01 (the "R44"), that can cause internal engine damage, including, *inter alia*, the stretching of the vehicle's timing chain and failure of the timing chain tensioner, which can result in engine failure ("VTC Defect"). The VTC Defect often causes Class Vehicles to emit a grinding and/or rattling noise at start-up.  Honda concluded in 2011, based upon a carefully executed controlled study designed to mimic real-world conditions, that the VTC Defect will cause failure of the timing chain tensioner, a well-known cause of engine failure.  Honda also expressly acknowledged in multiple Technical Service Bulletins ("TSBs") that the R44 Actuator is defective, but, in an egregious

---

SECOND AMENDED CLASS ACTION COMPLAINT

1

violation of its duties under the law, continued to use the defective component throughout the time that it manufactured the Class Vehicles.

3.      Honda has developed a replacement VTC Actuator, Honda part no. 14310-R5A-A01 (the "R5A"), which was introduced after production of the Class Vehicles concluded, as a service part in about February 2016.   On information and belief and based upon the investigation of counsel, the average cost of an R5A replacement (parts and labor) exceeds $500.  If the timing chain, timing chain tensioner and related components require replacement, the repair cost can easily exceed $1,000.  Class Members whose R44 Actuators fail after warranty expiration must pay out-of-pocket for an R5A replacement.

4.      The VTC Defect is a material defect that, if known prior to sale, would impact an ordinary consumer's purchasing decision because it causes the malfunction of an important engine timing system component, causes an objectionable noise that should not occur, damages other important engine timing system components, and causes performance issues and, ultimately, engine failure.   The VTC Defect presents a safety hazard because engine performance issues and engine failure increase the risk of a crash and can cause drivers to become stranded.  For these same reasons, the VTC Defect impacts the central functionality of the Class Vehicles.

5.      For example, one vehicle owner complained to the National Highway Traffic Safety Administration ("NHTSA") as follows:[1]

NHTSA ID No. 11281898 (November 18, 2019): VEHICLE MADE GRINDING NOISE UPON START-UP OVER SEVERAL MONTHS. HONDA CLAIMED IT IS NOT DAMAGING THE ENGINE AND THERE IS NO FIX. ENGINE CONTINUED TO GRIND AND MY CAR BEGAN HAVING OIL PROBLEMS. HONDA STILL SAID THERE WAS NO ISSUE AND THEY

---

[1] Spelling and grammatical errors in consumer complaints reproduced herein remain as found in the original.

WERE NOT RELATED. CAR CONTINUED GRINDING UNTIL THIS WEEK WHEN ALL LIGHTS ON THE DASHBOARD LIT UP. I TOOK MY HONDA AND WAS TOLD THE TIMING CHAIN IS STRETCHED AND IT NEEDS ANOTHER VTC ACTUATOR REPLACEMENT (THIS WAS FIXED UNDER WARRANTY THREE YEARS AGO). THE CAR COULD HAVE STALLED WHILE DRIVING. THIS IS A KNOWN ISSUE THAT HONDA IS REFUSING TO ACKNOWLEDGE OR RECALL IN HONDA CR-V'S. THEY CHARGED ME $1800 TO FIX AN ISSUE KNOWN TO THEM. THIS COULD HAVE RESULTED IN BODILY INJURY TO MYSELF OR OTHERS IF THE CAR HAD STALLED WHILE DRIVING. HONDA SHOULD TAKE RESPONSIBILITY FOR THEIR FAULTY ENGINES. THERE ARE MULTIPLE COMPLAINTS ON THIS SAME ISSUE.

6.      Similarly, the following complaints were posted on Edmunds.com related to the CR-V:

**Mark Weiss (November 1, 2015):** My 2012 CRV developed a very common widespread problem in Honda 4 cylinder engines, at about 49000 miles. A defective vtc actuator which causes a loud grinding noise at start. This is clearly something that should be covered by Honda's 5 year 60k power train warranty. Honda claims they having been researching how to repair it for four years without success. Meanwhile my vehicle is worthless in trade. just google crv makes noise at start

**J. Hamby (September 4, 2015):** Beware! I have a 2013 CR-V that has been making a terrible grinding noise since about 6 months after purchase. Honda Service has diagnosed it as the VTC Actuator. Noise has become much worse over time and this noise occurs almost every time I start my vehicle. Very annoying!! I've been told Honda Motors Tech Division has been working on coming up with a fix but there is NO FIX at this time. I was basically told by the Honda Service Dept to drive it till it breaks. Not what I wanted to hear. This problem has been occurring in various Honda vehicles since model year 2008 and they still don't have a fix. Why? Why keep producing something with the same problems?? Honda won't even attempt to replace the part to see if it will remedy the problem,

because they say the new part won't fix it. If you can't fix it, then you need to replace the car!

**BC (December 20, 2019):** Like so many other owners, the VTC actuator failed. Started by making the horrible grinding noise only on cold days, but over time it was happening every time I started the car. I had two dealerships try to convince me that it was only a noise issue (likely a lie Honda tells their dealers to say so they don't have to cover it). I had it replaced anyways and they found that my timing chain had stretched. Great way to spend $1400…

7.     The risk posed by the VTC Defect is also evidenced by Honda's internal records.  In a case involving the Class Vehicles that proceeded to trial on August 22, 2023, in the United States District Court for the Northern District of California, Quackenbush v. American Honda Motor Co. Inc., Case No. 3:20-cv-05599 (N.D. Cal), the jury heard evidence of actual repairs performed by Honda technicians on Class Vehicles exhibiting engine failure and/or damage to the timing system caused by the VTC Defect which can lead to engine failure, including the following:

> CUSTOMER STATES WILL NOT START TOWED IN . . . . FAULTY VTC ACTUATOR . . . . WHILE ATTEMPTING TO START HEARD EXCESSIVE NOISE COMING FROM CYLINDER HEAD.  REMOVED VALUE COVER TO INSPECT AND FOUND VTC ACTUATOR FAILED, CAUSING NOISE. REPLACED VTC ACTUATOR AND INSPECTED EXHAUST CAM SHAFT FOR DAMAGE.

Trial Transcript Vol. 4 at 638:22-639:10, *Quackenbush v. Am. Honda Motor Co, Inc*, Case No. 3:20-cv-05599 (N.D. Cal. Aug. 24, 2023), Dkt. No. 364.

> CUSTOMER STATES THERE IS A GRINDING NOISE WHEN STARTING UP VEHICLE AT COLD START . . . . [U]pon inspection and removal of old VTC Actuator, found that the timing chain is stretched and the tensioner damaged.  Recommend to replace chain, tensioner, and guides.

*Id.* at 640:20 641:19.

---

"CUSTOMER STATES VEHICLE WAS TOWED IN FOR A NO START – CEL . . . . VEHICLE HAD A LOUD RATTLE WHEN TRYING TO START . . . . TIMING CHAIN SEVERLY STRETCHED.  REPLACED THE CHAIN ACTUATOR AND GUIDES ALONG WITH THE TENSIONER.

*Id.* at 641:25-642:12.

8.     Defendants knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter.  Defendants have actively concealed the true nature and extent of the VTC Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase and thereafter.  Had Plaintiffs and Class Members known about the VTC Defect, they would not have purchased the Class Vehicles or would have paid less for them.

9.     Despite notice of the VTC Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, internal investigations and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the Defect and have not offered their customers a suitable repair or replacement free of charge.

10.     Honda knew of and concealed the VTC Defect that is contained in every Class Vehicle, along with the attendant problems the VTC Defect can cause with other engine components and associated repair costs, from Plaintiffs and Class Members both at the time of sale and repair and thereafter.  As a result of their reliance on Defendants' omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money and property, and/or loss in value of their Class Vehicle.

## II.     PARTIES

### A.     Plaintiffs

---

**Terri Larson (California)**

11.     Plaintiff Terri Larson resides in San Diego, California.  In about August 2013, Ms. Larson purchased a new 2013 Honda CR-V equipped with a 2.4 liter engine from Auto Honda Nation in Costa Mesa, California.  Prior to purchase, Ms. Larson spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the vehicle and test drove the vehicle.  Ms. Larson was never informed by the dealer sales representative that her vehicle suffered from the VTC Defect and relied upon this fact in purchasing her vehicle.  Had Ms. Larson been informed that her vehicle suffered from the VTC Defect, she would not have purchased it.  Ms. Larson purchased her vehicle for personal, family or household purposes.  Ms. Larson's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

12.     Ms. Larson's vehicle started exhibiting the VTC defect towards the end of 2021.  The VTC rattle occurs every day when she starts the vehicle in the morning.

13.     At all times, Ms. Larson has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Jameson Jauken (Colorado)**

14.     Plaintiff Jameson Jauken resides in Fort Collins, Colorado.   In about April 2016, Mr. Jauken purchased a used 2012 Honda CR-V equipped with a 2.4 liter engine from Honda of Greeley in Greeley, Colorado.  Prior to purchase, Mr. Jauken spoke with the dealer sales representative about the vehicle, inspected the vehicle and test drove the vehicle.  Mr. Jauken was never informed by the dealer sales representative that his vehicle suffered from the VTC Defect and relied upon this fact in purchasing his vehicle.  Had Mr. Jauken been informed that his vehicle suffered from the VTC Defect, he would not have

purchased it.   Mr. Jauken purchased his vehicle for personal, family or household purposes.  Mr. Jauken's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

15.   During the first winter of ownership (i.e., the winter of 2016-2017), Mr. Jauken noticed that his vehicle started making a rattling noise at cold start-up in the morning.  The rattling was intermittent and occurred only about four times during this first winter.  During this first winter or shortly thereafter, Mr. Jauken complained about the rattling noise to a service technician at Honda of Greeley.  The technician said that he could not help Mr. Jauken because he could not replicate the noise.

16.   Over time the frequency of the rattling noise gradually increased. In 2018, Mr. Jauken complained of the rattling noise again to a Honda of Greeley technician.  This discussion occurred approximately a year and a half after his first complaint.  This time, Mr. Jauken was told by Honda of Greeley that they had never seen the rattle cause any other issues and they did not recommend any work to address the noise.

17.   In around May 2021, Mr. Jauken's check engine light illuminated (along with multiple other warning lights) and the vehicle began to experience a loss of power while driving.  Concerned for his safety, Mr. Jauken brought his vehicle back to Honda of Greeley within a few days.  Honda of Greeley replaced the VTC Actuator, timing chain, timing chain tensioner and associated parts for which Mr. Jauken paid $1,677.72 out-of-pocket.  The repair order from this visit notes: "FOUND TIMING CHAIN TENSIONER TO HAVE FAILED CAUSING CHAIN TO SLACK AND THROW ENGINE LIGHT WITH CAM FAZER TIMING."

18.   At all times, Mr. Jauken has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Charles Kadlubowski (Connecticut)**

19.     Plaintiff Charles Kadlubowski resides in Windsor Locks, Connecticut.  In about September 2013, Mr. Kadlubowski purchased a new 2014 Honda CR-V equipped with a 2.4 liter engine from Lia Honda of Enfield in Enfield, Connecticut.  Prior to purchase, Mr. Kadlubowski spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the vehicle and test drove the vehicle.  Mr. Kadlubowski was never informed by the dealer sales representative that his vehicle suffered from the VTC Defect and relied upon this fact in purchasing his vehicle.  Had Mr. Kadlubowski been informed that his vehicle suffered from the VTC Defect, he would not have purchased it.  Mr. Kadlubowski purchased his vehicle for personal, family or household purposes.  Mr. Kadlubowski's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

20.     Mr. Kadlubowski's vehicle began to experience the VTC Defect in 2022, rattling upon initial start-up in cold weather.

21.     At all times, Mr. Kadlubowski has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**George Werner (Florida)**

22.     Plaintiff George Werner resides in Port Orange, Florida.  In about April 2014, Mr. Werner purchased a new 2014 Honda CR-V equipped with a 2.4 liter engine from Hendricks Honda in Daytona Beach, Florida.     Prior to purchase, Mr. Werner spoke with a dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the vehicle and test drove the vehicle.  Mr. Werner was never informed by the dealer sales representative that the vehicle suffered from the VTC Defect and relied on this fact in purchasing his vehicle. Had Mr. Werner been informed that his vehicle suffered

from the VTC Defect, he would not have purchased it.  Mr. Werner purchased his vehicle for personal, family or household purposes.  Mr. Werner's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

23.     Mr. Werner's vehicle began exhibiting the VTC Defect in 2020. Mr. Werner hears a brief rattling sound on initial cold start-up in the morning, particularly during cold weather.  Mr. Werner called Hendricks Honda about the noise when his vehicle first started rattling but was told that it was not something to be concerned about.

24.     At all times, Mr. Werner has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Martha Velasquez (Massachusetts)**

25.     Plaintiff Martha Velasquez resides in Revere, Massachusetts.  In 2016, Ms. Velasquez purchased a used 2014 Honda CR-V equipped with a 2.4 liter engine from Route 128 Honda in Reading, Massachusetts.   Prior to purchase, Ms. Velasquez spoke with the dealer sales representative about the vehicle, inspected the window sticker posted on the vehicle and test drove the vehicle.  Ms. Velasquez was never informed by the dealer sales representative that her vehicle suffered from the VTC Defect and relied upon this fact in purchasing her vehicle.  Had Ms. Velasquez been informed that her vehicle suffered from the VTC Defect, she would not have purchased it.  Ms. Velasquez purchased her vehicle for personal, family or household purposes.   Ms. Velasquez's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

26.     Ms. Velasquez's vehicle began to exhibit the VTC Defect in 2022. The vehicle emits a grinding sound for several seconds on nearly every initial cold start-up.

27.     At all times, Ms. Velasquez has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Judith Caleo (Maryland)**

28.     Plaintiff Judith Caleo resides in Hampstead, Maryland.   In or around March 2019, Ms. Caleo purchased a used 2014 Honda CR-V from Anderson Honda in Cockeysville, Maryland.  Prior to purchase, Ms. Caleo spoke with the dealer sales representative about the vehicle, inspected and test drove the vehicle.  Ms. Caleo was never informed by the dealer sales representative that her vehicle suffered from the VTC Defect and relied upon this fact in purchasing her vehicle.  Had Ms. Caleo been informed that her vehicle suffered from the VTC Defect, she would not have purchased it.  Ms. Caleo purchased her vehicle for personal, family or household purposes.  Ms. Caleo's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

29.     Ms. Caleo's vehicle exhibited the VTC Defect and rattled at startup. In early 2024, she paid $1,796.21 to Federal Motors in Baltimore Maryland to replace the VTC and other timing-system components.

30.     At all times, Ms. Caleo operated her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**David Josephson (Minnesota)**

31.     Plaintiff David Josephson resides in West Lakeland, Minnesota.  In 2015, Mr. Josephson purchased a used 2014 Honda CR-V equipped with a 2.4 liter engine from Inver Grove Honda, in Inver Grove, Minnesota.   Prior to purchase, Mr. Josephson spoke with the dealer sales representative about the vehicle, inspected the window sticker posted on the vehicle and test drove the vehicle.  Mr. Josephson was never informed by the dealer sales representative that his vehicle suffered from the VTC Defect and relied upon this fact in

purchasing his vehicle. Had Mr. Josephson been informed that his vehicle suffered from the VTC Defect, he would not have purchased it. Mr. Josephson purchased his vehicle for personal, family or household purposes. Mr. Josephson's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

32. Mr. Josephson's vehicle began to exhibit the VTC Defect in about 2017, rattling for several seconds on initial startup, particularly in cold weather. Initially the sound was intermittent and only occurred in the winter; it became more frequent and louder over time. In about January 2023, Mr. Josephson returned to Grove Honda and was quoted $1,326.83 to have his VTC Actuator replaced.

33. At all times, Mr. Josephson operated his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Adam Barksdale (Missouri)**

34. Plaintiff Adam Barksdale resides in Kansas City, Missouri. In 2012, Mr. Barksdale purchased a new 2012 Honda CR-V from Honda of Tiffany Springs in Kansas City, Missouri ("Tiffany Springs Honda"). Prior to purchase, Mr. Barksdale spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the vehicle and test drove the vehicle. Mr. Barksdale was never informed by the dealer sales representative that his vehicle suffered from the VTC Defect and relied upon this fact in purchasing the vehicle. Had Mr. Barksdale been informed that his vehicle suffered from the VTC Defect, he would not have purchased it. Mr. Barksdale purchased his vehicle for personal, family or household purposes. Mr. Barksdale's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

35.   In or around 2019, Mr. Barksdale's vehicle began to exhibit the VTC Defect.  He presented his vehicle to Tiffany Springs Honda and they diagnosed the vehicle as needing a replacement VTC, but declined to cover the repair under warranty.  Mr. Barksdale paid approximately $700 for the repair.

36.   At all times, Mr. Barksdale operated his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Carol Hardifer (New Jersey)**

37.   Plaintiff Carol Hardifer resides in Wrights Town, New Jersey.   In about October 2013, Ms. Hardifer purchased a new 2014 Honda CR-V equipped with a 2.4 liter engine from Hamilton Honda in Hamilton Township, New Jersey.   Prior to purchase, Ms. Hardifer spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the vehicle and test drove the vehicle.  Ms. Hardifer was never informed by the dealer sales representative that her vehicle suffered from the VTC Defect and relied upon this fact in purchasing her vehicle.  Had Ms. Hardifer been informed that her vehicle suffered from the VTC Defect, she would not have purchased it.  Ms. Hardifer purchased her vehicle for personal, family or household purposes.   Ms. Hardifer's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

38.   Ms. Hardifer's vehicle also exhibits the tell-tale symptom of the VTC Defect—a brief, loud rattling noise on initial start-up, particularly in cold weather.  Although the rattle was occasional when it first began, it has become more frequent and louder over time.

39.   At all times, Ms. Hardifer operated her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Carmine D'Amato (New York)**

40.    Plaintiff Carmine D'Amato resides in Yonkers, New York.   In 2014, Mr. Damato purchased a new 2014 Honda CR-V equipped with a 2.4 liter engine from Yonkers Honda in Yonkers, New York.  Prior to purchase, Mr. D'Amato spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the vehicle and test drove the vehicle. Mr. D'Amato was never informed by the dealer sales representative that his vehicle suffered from the VTC Defect and relied upon this fact in purchasing his vehicle.  Had Mr. D'Amato been informed that his vehicle suffered from the VTC Defect, he would not have purchased it.   Mr. D'Amato purchased the vehicle for personal, family or household purposes.  Mr. D'Amato's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

41.    Mr. D'Amato's exhibits the VTC Defect regularly during cold startup. Mr. D'Amato hears a brief rattling sound on initial startup in the morning.  In about November or December of 2022, Mr. D'Amato took his vehicle to Yonkers Honda and complained about the rattling sound but was told there was no recall and offered no relief.

42.    At all times, Mr. D'Amato has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**David Korman (New York)**

43.    Plaintiff David Korman resides in Riverside, Connecticut.  In 2014, Mr. Korman purchased a new 2014 Honda CR-V from Honda of New Rochelle in New Rochelle, New York.  Prior to purchase, Mr. Korman spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the vehicle and test drove the vehicle.  Mr. Korman was never informed by the dealer sales representative that his vehicle suffered from the VTC Defect and relied upon this fact in purchasing his vehicle.  Had Mr.

Korman been informed that his vehicle suffered from the VTC Defect, he would not have purchased it. Mr. Korman purchased the vehicle for personal, family or household purposes. Mr. Korman's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

44. In or around April 2022, Mr. Korman's CR-V started to exhibit the VTC Defect. Shortly after the vehicle began to rattle at startup, Mr. Korman brought his vehicle to an authorized Honda dealer, who charged him approximately $976 to replace the VTC.

45. At all times, Mr. Korman has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Carol Allen (North Carolina)**

46. Plaintiff Carol Allen resides in Raleigh, North Carolina. In 2014, Ms. Allen purchased a new 2014 Honda CR-V equipped with a 2.4 liter engine from Crown Honda in Durham, North Carolina. Prior to purchase, Ms. Allen spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the vehicle and test drove the vehicle. Ms. Allen was never informed by the dealer sales representative that her vehicle suffered from the VTC Defect and relied upon this fact in purchasing her vehicle. Had Ms. Allen been informed that her vehicle suffered from the VTC Defect, she would not have purchased it. Ms. Allen purchased her vehicle for personal, family or household purposes. Ms. Allen's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

47. Ms. Allen's vehicle first began to exhibit the VTC Defect in 2017; the rattle was intermittent at that time. In about December 2017, Ms. Allen took her vehicle to Crown Honda and complained about the rattling, but was offered no relief by the dealer who claimed it could not replicate the noise and did not advise her that it posed any problem. The rattle became more frequent over time

and in 2021 Ms. Allen was advised for the first time by an independent mechanic that the issue was the VTC Actuator. Ms. Allen promptly took her vehicle back to Crown Honda and had the part replaced at an out-of-pocket cost of $990.63.

48.    At all times, Ms. Allen has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Catherine Davis (Ohio)**

49.    Plaintiff Catherine Davis resides in Portsmouth, Ohio. In 2014, Ms. Davis purchased a new Honda CR-V equipped with a 2.4 liter engine from Lindsey Honda in Columbus, Ohio. Prior to purchase, Ms. Davis spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the vehicle and test drove the vehicle. Ms. Davis was never informed by the dealer sales representative that her vehicle suffered from the VTC Defect and relied upon this fact in purchasing her vehicle. Had Ms. Davis been informed that her vehicle suffered from the VTC Defect, she would not have purchased it. Ms. Davis purchased her vehicle for personal, family or household purposes. Ms. Davis's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

50.    Ms. Davis's vehicle began to exhibit the VTC Defect within approximately the last two years. At first, the vehicle only rattled intermittently on initial startup. The frequency has increased over time, and the rattle happens often now on initial startup.

51.    At all times, Ms. Davis has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Stacy Reiser (Pennsylvania)**

52.    Plaintiff Stacy Reiser resides in Jackson Center, Pennsylvania. In or around August 2019, Ms. Reiser purchased a used 2012 Honda CR-V equipped with a 2.4 liter engine from Shenango Honda in Hermitage,

Pennsylvania.   Prior to purchase, Ms. Reiser spoke with the dealer sales representative about the vehicle, inspected the window sticker posted on the vehicle and test drove the vehicle.  Ms. Reiser was never informed by the dealer sales representative that her vehicle suffered from the VTC Defect and relied upon this fact in purchasing her vehicle.  Had Ms. Reiser been informed that her vehicle suffered from the VTC Defect, she would not have purchased it.  Ms. Reiser purchased her vehicle for personal, family or household purposes.  Ms. Reiser's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

53.    In about March 2020, Ms. Reiser's vehicle began exhibiting a loud rattling noise on start-up, particularly in cold weather.  At first the rattling was intermittent, but it became more frequent over time.  In about October 2020 Ms. Reiser brought her vehicle Shenango Honda and was told that the rattling was the VTC Actuator.  Ms. Reiser was further told by the Shenango service advisor that her timing chain had worn and was loose and needed replacement because if it broke the engine would fail.  Ms. Reiser paid $1,789.88 out-of-pocket for replacement of her VTC Actuator, timing chain, timing chain tensioner and related parts.

54.    At all times, Ms. Reiser has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Sungwon Han (Texas)**

55.    Plaintiff Sungwon Han resides in Coppel, Texas.  In 2014, Mr. Han purchased a new 2014 Honda CR-V equipped with a 2.4 liter engine from McDavid Honda in Irving, Texas.  Prior to purchase, Mr. Han researched the 2014 CR-V on the internet, including on Honda's website.  Mr. Han also spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the vehicle and test drove the vehicle.  Mr. Han was

never informed by the dealer sales representative that his vehicle suffered from the VTC Defect and relied upon this fact in purchasing his vehicle. Had Mr. Han been informed that his vehicle suffered from the VTC Defect, he would not have purchased it. Mr. Han purchased his vehicle for personal, family or household purposes. Mr. Han's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

56.     Sometime in about 2019, Mr. Han's vehicle began to experience the VTC Defect, emitting a rattling noise at initial startup when it was cold outside. Mr. Han brought his vehicle to AutoNation Honda in Lewisville, Texas in January 2021 and again in November 2021 to complain about the rattling, but AutoNation claimed it was unable to duplicate the sound and, as a result, did nothing. Finally, in January 2022, AutoNation diagnosed the issue as the VTC Actuator which Mr. Han paid AutoNation $1,344.29 out-of-pocket to repair on about January 31, 2022.

57.     At all times, Mr. Han has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Arika Kuhlmann (Texas)**

58.     Plaintiff Arika Kuhlmann resides in Spokane, Washington. In about 2014 Ms. Kuhlmann purchased a new 2014 Honda CR-V equipped with a 2.4 liter engine from McDavid Honda in Irving, Texas. Prior to purchase, Ms. Kuhlmann spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the vehicle and test drove the vehicle. Ms. Kuhlmann was never informed by the dealer sales representative that her vehicle suffered from the VTC Defect and relied upon this fact in purchasing her vehicle. Had Ms. Kuhlmann been informed that her vehicle suffered from the VTC Defect, she would not have purchased it. Ms. Kuhlmann purchased her vehicle for personal, family or household purposes. Ms. Kuhlmann's vehicle

was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

59.   Ms. Kuhlmann's vehicle began to experience the VTC Defect approximately three years ago.  At that time she began to hear a brief, loud rattling sound at initial startup.  The rattling was intermittent and occurred most often when it is cold outside. The frequency of the rattle has increased over time and occurs now with regularity.

60.   At all times, Ms. Kuhlmann operated her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Ric Heaton (Washington)**

61.   Plaintiff Ric Heaton resides in Shoreline, Washington.  In 2013, Mr. Heaton purchased a new 2013 Honda CR-V equipped with a 2.4 liter engine from Lynnwood Honda in Lynnwood, Washington. Prior to purchase, Mr. Heaton performed online research, including visiting Honda's website as well as several Honda dealer websites and websites maintained by Kelly Bluebook and Consumer reports; spoke with the dealer sales representative about the vehicle; inspected the Monroney sticker posted by Honda on the vehicle; and test drove the vehicle.  Mr. Heaton was never informed by the dealer sales representative that his vehicle suffered from the VTC Defect and relied upon this fact in purchasing his vehicle.  Had Mr. Heaton been informed that his vehicle suffered from the VTC Defect, he would not have purchased it.  Mr. Heaton purchased his vehicle for personal, family or household purposes.  Mr. Heaton's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

62.   In or around mid 2022, Mr. Heaton's vehicle began to exhibit the VTC Defect.   Like the other Plaintiffs' vehicles, Mr. Heaton's vehicle intermittently exhibits a brief rattling sound on initial startup.  Mr. Heaton

contacted a local Honda dealer concerning the issue but was told there was no recall and was not advised that it would in any way harm his vehicle.

63.     At all times, Mr. Heaton has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**B.     Defendants**

64.     Defendant, American Honda Motor Company, Inc. is a California corporation with its principal place of business located at 1919 Torrance Blvd., Torrance, CA 90501 and doing business in California and throughout the United States.

65.     Defendant Honda Motor Co., Ltd., is a Japanese corporation with its principal place of business in Tokyo, Japan and the parent company of American Honda Motor Company, Inc.

66.     Defendants are responsible for the design, manufacture, distribution, marketing, sale and lease of the Class Vehicles.

67.     Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

## III.     JURISDICTION

68.     This is a class action.

69.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interest and costs.  At least one Class Member is a citizen of a state other than Defendant American Honda Motor Company, Inc.'s state of residence, and

Defendant Honda Motor Company, Ltd. is a citizen or subject of a foreign nation.

70.    Honda, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this District such that personal jurisdiction is appropriate.

## IV.    VENUE

71.    Venue is proper in this District because substantial part of the acts and omissions alleged herein took place here; because Defendant American Honda Motor Company, Inc. regularly conducts business in this District, directly and/or through its network of dealers; and because Plaintiff Terri Larson resides in San Diego, California and purchased his Class Vehicle in Costa Mesa, California.

72.    Plaintiffs' counsel's Declaration of Venue, to the extent required under California Civil Code Section 1780(d), is attached hereto as **Exhibit 1**.

## V.    FACTUAL ALLEGATIONS

### A.    Background

73.    To understand the VTC Actuator's central role in engine performance and why the VTC Defect can damage other engine components, it is helpful to understand how the Class Vehicles' engines function.

74.    The Class Vehicles' four stroke gasoline engine creates power by drawing air and gasoline into combustion chambers where they are compressed by the motion of a piston that is in turn connected to a crankshaft by connecting rods.  In order to allow fresh air and gasoline into the combustion chamber, spring loaded intake valves are pushed open just as each piston is starting to move down, so that the pistons suck in the air and fuel through the open valve. This is called the intake stroke.  Once the piston starts to rise, the intake valve closes and the air and fuel mixture is compressed to a very small volume, which

creates high pressure and temperature.  This is called the compression stroke. Around the time the piston reaches the point of maximum compression, a spark plug creates a strong spark and ignites the air and fuel, creating a small explosion that propels the piston back down.  This is called the power stroke. Finally, as the piston rises, the exhaust valve is pushed open so the burnt fuel and air can pe pushed out of the engine.  This is called the exhaust stroke.

75.    The part of the engine that opens the intake valves is called the camshaft, which is driven by the crankshaft through a chain called the timing chain.  There are timing chain sprockets on the camshaft and the crankshaft with teeth that engage with the links of the chain. It is necessary to keep the timing chain tight as the engine is running to make sure that the valves all open and close at exactly the right time.  This is accomplished by using durable plastic chain guides, one or more of which is pressed against the chain by use of springs and oil pressure.

76.    The VTC Actuator is the timing chain sprocket on the camshaft.  In contrast to a typical sprocket that would necessarily turn the camshaft in unison with the crankshaft, the VTC Actuator adjusts the rotational position of the camshaft relative to the timing chain, crankshaft and pistons.  It causes the camshaft (and thereby the intake valves) to "advance," or get a little bit ahead of the pistons when the engine is running faster and more power is required.  It also allows the camshaft to lag behind the pistons, or "retard" as the engine is slowing down and under little or no load.  The VTC Actuator is able to do this because it is comprised of an inner section (rotor) and an outer section (housing) that move relative to one another based on oil pressure provided by the engine, enabling it to constantly adjust the rotation of the camshaft.  When the engine is turned off oil pressure rapidly drops to zero and the VTC Actuator is designed to "lock" in place by means of a spring-loaded pin which temporarily disables

the VTC Actuator's variable function, essentially causing it to behave like a regular solid sprocket. This is done because as the engine starts, it takes a few seconds to build up oil pressure in the engine so that the VTC Actuator can properly function.

77. As a result of the VTC Defect, the locking pin in the Class Vehicles' VTC Actuators disengages prematurely for several seconds upon initial start-up while oil pressure is building up in the engine, allowing the VTC rotor to move back and forth and violently slam into the housing. This, in turn, causes the timing chain (which is wrapped around the housing) to tighten and slacken repeatedly when the vehicle is turned on, with the chain impacting the teeth of the camshaft sprocket (i.e., the VTC Actuator), crankshaft sprocket, and "slapping" the polymer timing chain guides as it rattles around. This force, in turn, is transferred to the timing chain tensioner. Whenever timing chain rattle occurs, all of these components, including the timing chain, the guides and the timing chain tensioner are being subjected to impact loads for which they were not designed. After repeated exposure to these impact loads, the timing chain will stretch as the links and pins are worn and deformed, the polymer guides will wear, which increases the slack of the timing chain and lowers the spring force of the guides against the chain. In addition, the repeated slapping of the timing chain caused by the VTC rattle will cause premature failure of the timing chain tensioner which will also increase the slack of the timing chain. If the timing chain fails, the intake valves stop moving while the engine is turning, and the intake valves will collide with the pistons, destroying the engine and bringing the car to an instant stop. If the timing chain tensioner fails or part of a timing chain guide fails, like the polymer portion separating from the steel backing frame, the chain can "jump-time", which can also cause a collision of the intake valves and pistons with the same instantly fatal result. On information and

belief, it is because of these serious consequences that Honda dealers routinely recommend costly replacement of malfunctioning VTC Actuators and associated timing components.

78.     The VTC Actuator that is the subject of this case, the R44 VTC Actuator, was first introduced in the 2008 Honda Accord which went on sale around the Fall of 2007.  The R44 was installed in all Class Vehicles, was of the same basic design throughout time and, as a result, prone to fail in the same manner in all Class Vehicles. Throughout time, the R44 Actuator has consisted of a special two-piece sprocket with inner and outer sections that move relative to each other to adjust the rotational position of the camshaft.  Throughout time, the R44 Actuator has employed the same basic design that relies upon a spring powered pin locking mechanism to disable the variable function when the engine is turned off and oil pressure goes to zero.   And throughout time, the R44 Actuator's spring powered pin locking mechanism has malfunctioned at startup, failing to consistently engage and disable the variable function, resulting in the VTC rattle.  Honda repeatedly acknowledged the existence of the VTC Defect, but continued to employ the same basic design throughout the Class Period, and not surprisingly the Class Vehicles have continued to experience the Defect in the same way throughout the Class Period.

**B.        Honda's Pre-Sale Knowledge of the VTC Defect**

79.     Honda knew that the R44 Actuator was materially defective, and that the VTC Defect posed a risk of damaging other engine components, when it sold the Class Vehicles.

80.     Honda has sold, directly or indirectly through dealers and other retail outlets, thousands of Class Vehicles in California.

81.     Honda became aware of the VTC Defect through sources not available to Plaintiffs and Class Members, including, but not limited to: pre-

production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Honda's network of dealers and directly to Honda, aggregate warranty data compiled from Honda's network of dealers, testing conducted by Honda in response to consumer complaints, and repair order and parts data received by Honda from Honda's network of dealers.

82.    During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles, which would necessarily have taken place prior to 2012, Honda, directly and/or through its agents or affiliated companies in the supply chain, necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicles' VTC Actuator, including, but not limited to: performance under various operating conditions; the basic engineering principles behind the VTC Actuator design; the forces and stresses the VTC Actuator would face; when and how the VTC Actuator would experience performance problems or fail; and, the cumulative and specific impacts on the VTC Actuator caused by wear and use, the passage of time, driver habits, environmental factors, etc.

83.    An adequate pre-release analysis of the design, manufacturing, engineering and testing of the VTC Actuator used for the Class Vehicles would have revealed to Honda that the Class Vehicles' VTC Actuator does not operate properly and is not fit for its intended use. Thus, during the pre-release design stage of the Class Vehicles, Honda would have known that the VTC Actuator in the Class Vehicles was materially defective and could pose a safety risk to owners/lessees and the motoring public.

84.    Honda also would have known about the VTC Defect because of a higher than expected number of warranty repairs attempted and replacement components ordered from Honda, which should have alerted Honda that the

VTC Actuator was defective.  Upon information and belief, Honda service centers use Honda replacement parts that they order directly from Honda, and all warranty repair attempts are logged into a centralized database to which Honda has access.  Therefore, Honda would have detailed and accurate data regarding the number and frequency of replacement part orders and warranty repair attempts.  The ongoing high number of warranty repair attempts and sales of replacement parts was known to Honda and would have alerted Honda that its VTC Actuator was materially defective early on.

85.   Additionally, Honda also knew about the VTC Defect because of numerous consumer complaints regarding grinding and/or rattling noises as well as the Class Vehicles stalling and or losing power that were made directly to Honda, the large number of complaints, and the consistency of their descriptions of the grinding and/or rattling noises, alerted Honda to this serious Defect affecting the Class Vehicles.  Upon information and belief, many Class Vehicle owners complained directly to Honda and Honda dealerships and service centers about the repeated VTC Actuator problems their vehicles experienced.

86.   A 2011 Honda study concerning the impact of a defective R44 VTC Actuator on the timing chain tensioner concluded that a defective R44 VTC Actuator will cause the vehicles' timing chain tensioner to fail.  A 2011 Honda Quality Improvement Sheet issued in conjunction with the 2011 tensioner study described the failure mechanism as follows: "As the VTC hammers back & forth, the timing chain begins to slap.  The tensioner receives the force against the plunger and pushes back against the tensioner cam.  Repeated hammering causes the cam & plunger teeth to wear.  Once the teeth become worn, the tensioner locking capability is lost.  This allows the plunger to move freely & the timing chain to slap."

87.   It is common knowledge in the automotive industry that a failed timing chain tensioner will ultimately cause engine failure if not remedied. Honda's own expert, Jason Arst, has conceded that a worn tensioner would worsen the deterioration of other parts: "If you wear" the tensioner teeth "down, you're going to cause accelerated failure of parts, absolutely."   Mr. Arst additionally testified that tensioner damage could ultimately lead to engine components losing synchronicity, which in turn could cause an engine to "jump[] time."   That is, " the sprocket and chain relationship is no longer the way you want it or the way it should be.  So you get sort of an out of alignment between where the two items are supposed to be…And so therefore your timing is going to be different than the way it should be."  Mr. Arst added, "[a]t some point, you're going to—if you keep jumping time and keep jumping time, then you could get into a situation where you have interference between parts.  And then the engine would stop running at that point." Trial Transcript Vol. 4 at 617:17-618:17, Quackenbush v. Am. Honda Motor Co, Inc, Case No. 3:20-cv-05599 (N.D. Cal. Aug. 24, 2023), Dkt. No. 364.

88.   Thus, Honda possessed conclusive proof no later than 2011 that the VTC Defect could cause engine failure.

89.   A chain of TSBs quietly issued by Honda to its dealers evidences its early knowledge of the VTC Defect as well as the continuing nature of the problem.

90.   For example, on October 21, 2011, Honda issued TSB 09-010 titled "Engine Rattles at Cold Start-Up" applicable to 2008-2009 Honda Accord vehicles.  This TSB states, in pertinent part:

**SYMPTOM**
At cold start-up the engine rattles loudly for 2 seconds.

**PROBABLE CAUSE**

The variable valve timing control (VTC) actuator is defective.

**CORRECTIVE ACTION**
Use the repair procedure in this service bulletin to replace the VTC Actuator…

This TSB identifies the defective VTC Actuator as part number 14310-R44-A01. A copy of this TSB is attached hereto as **Exhibit 2**.

91.    The following year on October 6, 2012, Honda issued an updated version of TSB 09-010 further evidencing its knowledge of the VTC Defect. This service bulletin titled "Engine Rattles at Cold Star-Up" is applicable to the 2008 through 2012 Accord and 2007 through 2012 CR-V vehicles and states:

**SYMPTOM**
At cold start-up the engine rattles loudly for 2 seconds.

**PROBABLE CAUSE**
The variable valve timing control (VTC) actuator is defective.

**CORRECTIVE ACTION**
Replace the VTC Actuator…

This TSB identifies the defective VTC Actuator for the 2008-2012 Accord and the 2012 CR-V as part number 14310-R44-A01. A copy of this TSB is attached hereto as **Exhibit 3**.

92.    In or about November 2015 Honda released ServiceNews Article A15110E Version 1 titled "Engine Rattle at Cold Start in Cold Weather" applicable to 2008-2012 Honda Accord vehicles, 2012-2015 Honda Crosstour vehicles and 2012-2014 Honda CR-V vehicles. This document states that if the engine rattles at cold startup for 1 to 2 seconds when it's cold outside "Chances are the VTC Actuator is the culprit." This document goes on to caution, however, that "simply replacing the VTC Actuator using current parts stock **won't** work" and that it is expected counter measured parts will be available the

next year.  Id. (emphasis in original).  A copy of this document is attached hereto as **Exhibit 4**.

93.    In or about February 13, 2016, Honda issued TSB 16-012 titled "Engine Rattles at Cold Start-Up" applicable to 2013-2014 Honda CR-V vehicles and 2013-2015 Honda Crosstour vehicles.  This Service Bulletin states, in pertinent part:

> **SYMPTOM**
> At cold start-up the engine rattles loudly for about 2 seconds.  This may be intermittent and occurs when the outside temperature is below 40 F.
>
> **PROBABLE CAUSES**
> The variable valve timing control (VTC) actuator is defective.
>
> **CORRECTIVE ACTION**
> Replace the VTC Actuator.  This procedure does not require the complete removal of the cam chain and associated parts, so repair time is much shorter.

This TSB identifies the defective "Failed Part Number" as 14310-R44-A01.  This TSB introduces, for the first time, Honda's replacement for the defective R44 Actuator, the R5A.  The R5A Actuator was introduced as a service part after conclusion of production of the Class Vehicles, and after many Class Vehicle owners were already out of warranty.  A copy of this TSB is attached hereto as **Exhibit 5**.

94.    On information and belief, all Class Vehicles suffer from the same Defect which is evidenced by the above history as well as the consumer complaints, and which has persisted through the class period because Honda reused the same or substantially similar VTC Actuator part though it knew it was defective and would fail.  Notwithstanding its knowledge of the VTC Defect, Honda has actively concealed the Defect from the public at large and failed to provide a remedy for the Defect to date.

**C.     Example Consumer Complaints**

95.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the VTC Defect.

96.     Honda monitors consumer complaints made to the National Highway Traffic Safety Administration ("NHTSA") and, on information and belief, elsewhere on the Internet.  Federal law requires automakers like Honda to be in close contact with the NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to the NHTSA, including field reports, customer complaints, and warranty data. See Transportation Recall Enhancement, Accountability and Documentation ("TREAD") Act, Pub. L. No. 106-414, 114 Stat.1800 (Nov. 1, 2000).

97.     The following example complaints filed by consumers with the NHTSA and posted on the Internet, which on information and belief Honda actively monitored during the relevant period, demonstrate that the VTC Defect is widespread and dangerous:

- **NHTSA ID No. 11281898 (November 18, 2019):** VEHICLE MADE GRINDING NOISE UPON START-UP OVER SEVERAL MONTHS. HONDA CLAIMED IT IS NOT DAMAGING THE ENGINE AND THERE IS NO FIX. ENGINE CONTINUED TO GRIND AND MY CAR BEGAN HAVING OIL PROBLEMS. HONDA STILL SAID THERE WAS NO ISSUE AND THEY WERE NOT RELATED. CAR CONTINUED GRINDING UNTIL THIS WEEK WHEN ALL LIGHTS ON THE DASHBOARD LIT UP. I TOOK MY HONDA AND WAS TOLD THE TIMING CHAIN IS STRETCHED AND IT NEEDS ANOTHER VTC ACTUATOR REPLACEMENT (THIS WAS FIXED UNDER WARRANTY THREE YEARS AGO). THE CAR COULD HAVE STALLED WHILE DRIVING. THIS IS A KNOWN ISSUE THAT HONDA IS REFUSING TO ACKNOWLEDGE OR RECALL IN HONDA CR-V'S. THEY CHARGED ME $1800 TO FIX AN ISSUE KNOWN TO THEM. THIS COULD HAVE RESULTED IN BODILY INJURY TO MYSELF OR OTHERS IF THE CAR HAD STALLED

WHILE DRIVING. HONDA SHOULD TAKE RESPONSIBILITY FOR THEIR FAULTY ENGINES. THERE ARE MULTIPLE COMPLAINTS ON THIS SAME ISSUE.

- **NHTSA ID No. 10564788 (July 8, 2013):** TL- THE CONTACT OWNS A 2012 HONDA CR-V. THE CONTACT STATED THAT WHILE STARTING THE VEHICLE AFTER BEING IDLE FOR AN EXTENDED TIME, THE CONTACT HEARD A RATTLING NOISE FROM THE ENGINE. THE VEHICLE WAS TAKEN FOR DIAGNOSIS WHERE THE CONTACT WAS ADVISED THAT THE VTC ACTUATOR WOULD NEED TO BE REPLACED. THE VEHICLE WAS REPAIRED HOWEVER, THE FAILURE RECURRED. THE VEHICLE WAS TAKEN BACK TO THE DEALER SEVERAL TIMES. THE DEALER WAS UNABLE TO DUPLICATE THE FAILURE BUT DID STATE THAT THE VEHICLE WAS CONSUMING MORE THAN 2.5 QUARTS OF ENGINE OIL WITHIN A 15 DAY SPAN. THE MANUFACTURE WAS CONTACTED AND STATED THAT THEY WOULD FURTHER INVESTIGATE THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 20,000. THE CURRENT MILEAGE WAS 26,492. KMJ

- **NHTSA ID No. 10731929 (July 5 ,2015):** LOUD METALLIC RATTLE NOISE ON COLD START-UP. HONDA DEALER FOUND HONDA SERVICE BULLETIN 09-010 ISSUED, BUT NO FIX FOR THIS PROBLEM HAS BEEN ISSUED TO DATE.

- **NHTSA ID No. 10748059 (August 12, 2015):** TL* THE CONTACT OWNS A 2012 HONDA CR-V. WHEN THE VEHICLE WAS STARTED, A LOUD GRINDING SOUND EMITTED FROM THE FRONT OF THE VEHICLE. THE FAILURE RECURRED EACH TIME THE VEHICLE WAS STARTED IF IT HAD BEEN PARKED FOR OVER FOUR HOURS. THE VEHICLE WAS TAKEN TO THE DEALER. THE TECHNICIAN STATED THAT THEY WERE AWARE OF THE FAILURE AND THE CONTACT WOULD BE PLACED ON A WAITING LIST. THE CONTACT STATED THAT THE VTC ACTUATOR WAS FAULTY AND NEEDED TO BE REPLACED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 43,000.

- **NHTSA ID No. 10758990 (August 24, 2015):** COLD START OF ENGINE CAUSES LOUD GRINDING NOISE ONLY 2 AND A HALF YEARS OF OWNERSHIP 50,000 MILES
  LOOKING ONLINE IT IS NOT A UNIQUE PROBLEM AND IS AN ENGINE DESIGN FLAW. HONDA ONLY SAYS IT'S WORKING ON THE PROBLEM BUT DOESN'T HAVE A FIX YET. THEY SAY THE OFFICIAL PROBLEM IS THAT THE VTEC ACTUATOR IS DEFECTIVE.
  GIVEN THE NUMBER OF POSTS ASKING ABOUT THIS PROBLEM I WOULD ASSUME THE COMPANY WOULD WORK ON IT ESPECIALLY IF IT IS A PROBLEM WITH THE ENGINE.

- **NHTSA ID No. 10764021 (September 15, 2015):** LOUD NOISE ON START-UP ALL THE TIME (DOESN'T MATTER IF COLD OR HOT). TOOK TO DEALER, PEORIA, IL - 12/30/2014 SUSPECTED VTC ACTUATOR. DEALER SAID COULD NOT DUPLICATE, AFTER I EVEN RECORDED THE NOISE. BROUGHT BACK IN APRIL 2015, INSISTED THEY LISTEN WHILE I WAS THERE. DIAGNOSED VTC ACTUATOR. SAID HONDA HAD A TECH BULLETIN, SAID THEY KNOW ABOUT THE PROBLEM BUT WILL NOT ALLOW DEALER TO FIX IT. TOLD TO CHECK BACK AGAIN SOON. I CHECKED BACK OVER SEVERAL MONTHS. SAME ANSWER. THERE IS NO FIX, HONDA KNOWS ABOUT THE PROBLEM. HOW CAN A MANUFACTURER KNOW THERE IS A PROBLEM, AND SAY THEY CAN'T FIX IT. I CAN'T RESALE THE VEHICLE WITH THIS NOISE. THE NOISE IS VERY LOUD AND EMBARRASSING ON EVERY START UP. DEALER REFUSES TO FIX OR PROVIDE ANY SOLUTION. THIS SEEMS TO BE A PROBLEM WITH DIFFERENT HONDA VEHICLES, AND CONSUMERS CAN'T GET THE PROBLEM FIXED.

- **NHTSA ID No. 10773718 (June 10, 2015):** PURCHASED A HONDA CRV 2012 FROM A DEALERSHIP BUT THEY BROUGHT THE CAR TO ME FOR A TEST DRIVE WHICH RESULTED IN MY NOT HEARING THE GRINDING NOISE ON STARTUP. THE ENGINE MAKES A GRINDING SOUND EVERY TIME YOU START IT (COLD STARTS...WHEN I START IT IN THE MORNING IT MAKES THE SOUND AND IF I START IT WITHIN 15-20 MINUTES AFTER THE INITIAL START IT IS MUCH MILDER OF A NOISE.) THE HONDA MECHANIC SAID THEY COULD NOT FIX IT (STILL UNDER

WARRANTY AT THE TIME) BECAUSE HONDA HAS NOT DONE A "SOFTWARE UPDATE." I NOW SEE, AFTER RESEARCHING THE ISSUE, THAT THIS IS AN ONGOING PROBLEM WITH HONDA CRV'S THAT HAS NOT BEEN RECTIFIED.

- **NHTSA ID No. 10780695 (October 7, 2015):** ENGINE MAKES RATTLING OR GRINDING NOISE ON STARTUP, USUALLY IN THE MORNING OR WHEN THE CAR HAS SET FOR AT LEAST 6 TO 8 HOURS.

- **NHTSA ID No. 10781661 August 13, 2013):** HONDA CRV 2012 WHEN STARTING THE CARE IN THE MORNING, ENGINE MAKES A RATTLING NOISE AFTER IT STARTS. THIS HAS BEEN HAPPENING FOR THE PAST YEAR OR SO, ON A DAILY BASIS. OF LATE, IT HAPPENS IN THE EVENING AS WELL. I.E) WHENEVER THE CAR HAS NOT BEEN RUNNING FOR A COUPLE OF HOURS. THE HONDA DEALERSHIP IS SAYING THAT THERE IS NO BULLETIN FROM AMERICAN HONDA COMPANY ON THIS, IN ORDER TO FIX THE ISSUE. AND THAT THIS IS NOT CAUSING ANY DAMAGE TO THE ENGINE. HOWEVER, I SEE A SERVICE BULLETIN ISSUED IN OCTOBER 2012 SPECIFICALLY FOR THIS, AND IT IS STORED ON THE NHTSA.DOT.GOV WEBSITE.

- **NHTSA ID No. 10785104 (October 21, 2015):** WHEN I "COLD" START MY CAR (MORNINGS, AFTER 6 HOURS OF NONUSE) THERE IS A LOUD GRINDING/SCREECHING NOISE THAT LASTS A FEW SECONDS (HTTPS://WWW.YOUTUBE.COM/WATCH?V=V3Z00LN1DD8). THE SCHAUMBURG (IL) DEALERSHIP SAYS HONDA IS AWARE OF THIS PROBLEM AND HAS NOT PROVIDED A SOLUTION TO THEM YET. I CONTACTED THEM ON MARCH 13, 2015, REGARDING THIS. THEY PROVIDED THE SAME ANSWER TODAY...WHILE THE PROBLEM/NOISE PERSISTS. I AM HOPING THIS COMPLAINT WILL HELP FORCE HONDA DEVELOP A (VTC ACTUATOR?) SOLUTION AND PROVIDE IT TO HONDA DRIVERS.

- **NHTSA ID No. 10807199 (November 27, 2015):** STARTING CAR SOUND IS A GRINDING SOUND. TENDS TO HAPPEN IN THE MORNING WHEN I FIRST START IT UP FOR THE DAY. I THINK

HONDA SHOULD REPLACE THE CAM ACTUATOR GEAR ASSEMBLY. WHAT ELSE IS GETTING RUINED ON MY CAR WHEN NO ACTION HAS BEEN TAKEN PLACE BY HONDA?

- **NHTSA ID No. 10816344 (December 27, 2015):** GRINDING/RATTLING ENGINE NOISE ON FIRST START-UP ONLY. APPEARS TO BE THE VTC ACTUATOR PROBLEM. HAPPENS ONLY IN COLD WEATHER. ALMOST BOUGHT A TOYOTA RAV4 INSTEAD. MAYBE I SHOULD HAVE BOUGHT THE TOYOTA?

- **NHTSA ID No. 10822136 (November 5, 2015):** GRINDING NOISE OCCURS ON 1ST START UP WHEN CAR IS COLD AND OCCASIONALLY DURING THE DAY. WE TOOK IT TO HONDA DEALERSHIP ON 11/5/2015 AND THEY SAY IT IS THE VTC ACTUATOR AND NO REPAIRS WILL BE DONE AT THIS TIME. WE TOOK IT TO PASADENA HONDA ON 1/25/16 AND THE SERVICE MANAGER SAID THEY HONDA WOULD EMAIL US WHEN THEY HAD A FIX. I CALLED HONDA CUSTOMER SERVICE AND FILED A COMPLAINT. THEY SAID HONDA WAS WORKING ON A SECOND SOLUTION.THE NOISE CONTINUES TO WORSEN. THEY SAID IT WASN'T A SAFETY ISSUE OR WOULDN'T HURT THE ENGINE(?)

- **NHTSA ID No. 10875675 (June 21, 2016):** A GRINDING NOISE OCCURS UPON STARTING WHICH LASTS FOR A FEW SECONDS. I HAD ASKED ABOUT IT ON MORE THAN ONE OCCASION WHEN BRINGING MY CAR TO THE HONDA DEALERSHIP FOR SERVICE. A SERVICE MANAGER CAPTURED IT ON VIDEO AND SAID THERE WAS NOT ANY EFFECT TO THE VEHICLE. MY WARRANTY IS NOW EXPIRED AND I IMAGINE TRYING TO SELL THE VEHICLE IN THE FUTURE WILL BE A PROBLEM WHEN SOMEONE HEARS THAT NOISE.

- **NHTSA ID No. 1 10971932 (February 5, 2017):** 012 HONDA CR-V VTC ACTUATOR RECALL.....WHENEVER I START MY CAR I HEAR A GRINDING NOISE WHICH I HAVE BEEN TOLD IS THE

VTC ACTUATOR. THE NOISE IS VERY ANNOYING IT MAKES LOUD LOUD NOISE EVERY TIME THE CAR IS STARTED.

- **NHTSA ID No. 11006517 (July 20, 2017):** THE ENGINE MAKES A RATTLING NOISE WHEN THE CAR IS TURNED ON IN COLD WEATHER, USUALLY WHEN IT IS FIRST TURNED ON IN THE MORNING. I LIVE ON THE GULF COAST, SO IT REALLY DOESN'T EVEN GET THAT COLD DOWN HERE, BUT I HAVE NOTICED THIS ON MULTIPLE "COLD" MORNINGS (TEMPERATURES MAYBE IN THE 40S). I NOTICED SEVERAL OTHER PEOPLE HAVE REPORTED THIS PROBLEM. I DON'T KNOW IF IT IS CAUSING DAMAGE TO THE CAR, BUT IT DOES NOT SOUND GOOD.

- **NHTSA ID No. 11015676 (July1 8, 2016):** ENGINE RATTLES ON COLD START. TIES TO THEIR SERVICE BULLETIN 09-010 ISSUE. THIS WAS REPORTED TO SUBURBAN HONDA NOVI 7/18/2016 WHEN CAR MILEAGE WAS 59716. CAR WAS RETURNED INDICATING THIS ISSUE COULD NOT BE REPLICATED. SERVICE BULLETIN DATES BACK TO MARCH 17 2016. HOW DID SUBURBAN HONDA NOT RECOGNIZE THIS AS THE ISSUE WHEN I FIRST REPORTED TO THEM ON 7/18/2016? TODAY 8/16/17 THIS ISSUE HAS COUMPONDED. EVERY TIME CAR IS STARTED AFTER KEPT IDLE OF MORE THAN AN HOUR THE RATTLE SOUND IS REAL LUD. LOCAL TECHNICIAN, PAUL'S AUTOMOTIVE SAID YESTERDAY, IT IS REAL IMPOARTANT IT BE LOOKED AT BY HONDA. SO TAKIN IT TO SUBURBAN HONDA TODAY 8/16/17.

- **NHTSA ID No. 11033242 (June 11, 2017):** EVERY TIME I START A CAR I HEAR A GRINDING SOUND THAT LASTS FOR 1-2 SECONDS AND THEN STOPS. THIS IS HOW IT SOUNDS LIKE: HTTPS://WWW.YOUTUBE.COM/WATCH?V=KR20BAOXBO8 THIS HAPPENS TO HONDA CR-V'S AND ACCORDS WITH 2.4L 4 CYL. ENGINES. THE ISSUES KNOWN AS "VTC ACTUATOR ASSEMBLY" - HTTPS://WWW-ODI.NHTSA.DOT.GOV/ACMS/CS/JAXRS/DOWNLOAD/DOC/UCM 501009/SB-10041669-6712.PDF THIS IS A HUGE PROBLEM FOR VEHICLES ASSEMBLED BETWEEN 2010 - 2016 AND IT SHOULD BE A RECALL TO FIX THE

ISSUE. AS OF NOW HONDA IS NOT ADMITTING THAT THERE IS THE PROBLEM.

- **NHTSA ID No. 11040064 (October 26, 2017):** THE VTC IS MAKING A RATTLING NOISE ON A COLD START UP. THIS STARTED OUT OF NOWHERE AND HAS NOT GONE AWAY. MY CAR IS PARKED IN A GARAGE AT HOME AND IS PARKED OUTSIDE AT WORK BUT WILL DO THE SAME NO MATTER WHAT.

- **NHTSA ID No. 11089059 (April 20, 2018):** GRINDING NOISE UPON COLD START. THIS ISSUE STARTED AT LEAST TWO YEARS AGO. DID NOT HAPPEN ON EVERY START. ASKED DEALERSHIP WHAT IT MIGHT BE AND I WAS TOLD IT WAS NOTHING. OVER THE PAST YEAR, NOISE HAPPENS RELIGIOUSLY EVERY TIME THERE IS A COLD START. DEALERSHIP NOW SAYS IT'S THE VTC ACTUATOR AND I AM NOW PAST MY WARRANTY. IT APPEARS THAT A TSB WAS ISSUED MARCH 2016. WHY HAS NO RECALL BEEN MADE SINCE THIS IS A WIDESPREAD ISSUE?

- **NHTSA ID No. 11089747 (April 23, 2018):** ENGINE RATTLES AT COLD START UP. PER SERVICE BULLETIN THE VTC ACTUATOR IS FAULTY AND NEEDS TO BE REPLACED WITH AN UPGRADED PART. THIS IS THE SECOND TIME I WILL NEED TO HAVE IT REPLACED. I SHOULDN'T HAVE TO PAY FOR THIS REPAIR AGAIN.

- **NHTSA ID No. 11119641 (August 13, 2018):** GRINDING NOISE UPON COLD START. THIS ISSUE STARTED AT LEAST TWO YEARS AGO. DID NOT HAPPEN ON EVERY START. ASKED DEALERSHIP WHAT IT MIGHT BE AND I WAS TOLD IT WAS NOTHING. OVER THE PAST YEAR, NOISE HAPPENS RELIGIOUSLY EVERY TIME THERE IS A COLD START. DEALERSHIP NOW SAYS IT'S THE VTC ACTUATOR AND I AM NOW PAST MY WARRANTY. IT APPEARS THAT A TSB WAS ISSUED MARCH 2016. WHY HAS NO RECALL BEEN MADE SINCE THIS IS A WIDESPREAD ISSUE? CLASS ACTION SETTLEMENT 3/2018 DID NOT INCLUDE THE CRV'S

- **NHTSA ID No. 11123154 (August 29, 2018):** RATTLE NOISE ON COLD START UP. VTC ACTUATOR REPLACED UNDER WARRANTY AND NOW SAME PROBLEM AGAIN AFTER 10;000 MILES. FROM MY READING AND SPEAKING TO SEVERAL AUTO MECHANICS, THIS IS A COMMON PROBLEM WITH THIS MODEL OF CAR AND IT SEEMS LIKE HONDA OF AMERICA HAS NOT TAKEN RESPONSIBILITY FOR ADDRESSING THIS PROBLEM ADEQUATELY. I THINK A RECALL OF THIS ENGINE OR AN EXTENSION OF THE WARRANTY SHOULD BE REQUIRED.

- **NHTSA ID No. 11140458 (August 13, 2016):** ENGINE RATTLES AT COLD START-UP - VTC ACTUATOR NEEDS REPLACEMENT. THE HONDA DEALER (CRISWELL HONDA, GERMANTOWN MD) DOING THE MAINTENANCE SAYS THAT I HAVE GONE PAST THE WARRANTY. BUT I HAVE BEEN THERE MULTIPLE TIMES FOR SERVICE BEFORE AND MENTIONED ABOUT THE ISSUE. THEY DID NOT FIX IT OR EXPLAINED TO ME THE ISSUES. THEY ARE CHARGING ME $800 NOW FOR THIS. BASED ON CURRENT SEARCH IN GOOGLE, THIS IS WHAT I FIND. PLEASE HELPHONDA TSB NUMBER:A09-010.V4 NHTSA NUMBER:10087883TSB DATE:MARCH 17, 2016 FAILING COMPONENT: ENGINE (PWS) SUMMARY: SERVICE BULLETIN - REPLACE THE VTC ACTUATOR IF THE ENGINE RATTLES LOUDLY FOR 2 SECONDS DURING COLD START-UP.

- **NHTSA ID No. 11150687 (November 10, 2018):** RATTLE/GRINDING NOISE ON COLD STARTS. AT FIRST, IT WAS ONLY ON VERY COLD MORNINGS, WHICH WE DON'T USUALLY HAVE HERE IN THE SOUTH (ALABAMA); HOWEVER, TODAY, IT DOES IT EVERY TIME YOU START THE CAR. IT'S A FRIGHTENING NOISE THAT SOUNDS LIKE IT'S TEARING UP THE ENGINE. THERE ARE VIDEOS AND HUNDREDS OF COMPLAINTS ONLINE ABOUT THIS ISSUE. I HAVE READ SOMETHING ABOUT A CLASS-ACTION LAWSUIT, AS WELL, ALTHOUGH I WAS NEVER NOTIFIED OF THAT.

- **NHTSA Id No. 11184334 (March 5, 2019):** FAULTY VTC ACTUATOR, GRINDING NOISE ON STARTING THE CAR EVERYDAY IN THE MORNINGS. DEALER HAVE A $600.00

ESTIMATE TO HAVE IT FIXED AND NOT COVERED UNDER STANDARD WARRANTY.

HONDA IS AWARE OF THIS ISSUE AND NO RECALL HAS BEEN ISSUED.

- **NHTSA Id No. 11184334 (April 14, 2019):** GRINDING NOISE WHEN COLD STARTING AND IT HAS BEGUN TO STALL THE ENGINE.

- **NHTSA Id No. 11242530 (August 8, 2019):** THERE'S A GRINDING NOISE THAT FOLLOWS THE START OF THE ENGINE. THIS ISSUE BEGAN 2 YEARS AGO DURING THE WINTER MONTHS. TOOK IT TO HONDA TO SEE WHAT WAS WRONG. THEY WEREN'T ABLE TO RECREATE THE SOUND AND SENT ME ON MY WAY.
  IT'S NOW DOING IT ALL OF THE TIME. I HAVEN'T TAKEN IT TO HONDA AGAIN, BUT I WILL WHEN I HAVE THE TIME AND MONEY TO FIX IT.
  INITIAL VIEWING OF THIS SITE SHOWS A LOT OF THE SAME ISSUE. HAVEN'T DONE ANY FURTHER RESEARCH TO SEE IF THE ISSUE HAS BEEN RESOLVED OR HANDLED BY HOND. I WILL ONCE I FINISH THIS POST. HOPEFULLY, HONDA IS DOING OR WILL DO THE RIGHT THING AND RECALL VEHICLES AFFECTED BY THIS ISSUE.

- **NHTSA Id No. 11289643 December 17, 2019):** VTC ACTUATOR GRINDING ON COLD START. REPORTED TO HONDA. PAID TO HAVE IT REPLACED OUT OF POCKET AT A COST OF $1443.83 ON 9/24/18 AT 111,863 MILES. AT 122,000 MILES STARTED HAVING HIGH OIL CONSUMPTION. AFTER SEVERAL MISDIAGNOSIS BY HARE HONDA, DETERMINED SAME ISSUE AS 2011 TSB A12-089 PROBLEM WITH STICKING PISTON RINGS. REQUIRES FULL ENGINE REBUILD QUOTED AT $2000. IF NOT FIXED CAN CAUSE ENGINE FAILURE.

- **NHTSA Id No. 1 10574783(September 15, 2015):** TL* THE CONTACT OWNS A 2013 HONDA CRV. THE CONTACT STATED THAT UPON STARTING THE VEHICLE, THERE WAS A GRINDING NOISE HEARD ON NUMEROUS OCCASIONS. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER, WHO DIAGNOSED THAT THE

VARIABLE TIMING CONTROL ACTUATOR NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED BUT THE FAILURE RECURRED. THE CONTACT STATED THAT THE VEHICLE WAS RETURNED WITHIN A WEEK OF THE REPAIR AND THE SAME EXACT PART WAS REPLACED. THE VEHICLE EXHIBITED THE FAILURE AGAIN BUT WAS NOT REPAIRED. THE CONTACT STILL HEARD THE GRINDING NOISE WITH NO REMEDY FOR THE FAILURE. THE VEHICLE WAS TAKEN BACK TO THE AUTHORIZED DEALER, WHO WAS UNABLE TO DIAGNOSE THE FAILURE. THE FAILURE PERSISTED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 4000.

- **NHTSA Id No. 10587444 (April 23, 2015):** TL* THE CONTACT OWNS A 2013 HONDA CR-V. THE CONTACT STATED THAT WHEN STARTING THE VEHICLE, A GRINDING NOISE WAS HEARD FROM THE FRONT END. THE FAILURE WAS RECURRING AND INTERMITTENT. THE VEHICLE WAS TAKEN TO A DEALER WHERE THE FAILURE WAS UNABLE TO BE DIAGNOSED. THE MANUFACTURER WAS NOTIFIED OF THE ISSUE. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE AND CURRENT MILEAGE WAS 19,000. KMJ

- **NHTSA Id No. 10678464 (January 23, 2015):** GRINDING SOUND UPON START. PROBABLY THE VTC ACTUATOR. *TR

- **NHTSA Id No. 10705578 (December 1 2014):** AS I REPORTED LAST YEAR, THERE IS A VTC ACTUATOR DESIGN FLAW THAT CREATES A GRINDING NOISE WHEN THE TEMPS FALL BELOW FREEZING AND IN SOME CASES EVEN ABOVE FREEZING MAINLY DUE TO LACK OF OIL PRESSURE AND THE ACTUATOR NOT LOCKING CORRECTLY. WELL, ANOTHER WINTER HAS COME AND GONE AND THERE IS STILL NO HINT OF A FIX FROM HONDA. THEY CLAIM THERE IS NO DAMAGE OCCURRING BUT ANY TIME I HEAR METAL ON METAL I BEG TO DIFFER. UNFORTUNATELY AT THIS POINT I AM LOOKING AT OPTIONS SUCH AS TRADING THE VEHICLE IN AS I DON'T KNOW WHAT KIND OF SERIOUS DAMAGE IS BEING DONE EACH WINTER WITH METAL ON METAL GRINDING.

HONDA SURE HAS LOST THEIR PRESTIGIOUS CLAIM OF RELIABILITY IN MY EYES. SADLY THIS WILL BE MY LAST HONDA PRODUCT AS THEY DON'T SEEM TO ADDRESS CUSTOMER CONCERNS IN ANY KIND OF TIMELY MANNER. *TR

- **NHTSA Id No. 10732326 (July 1, 2014):** WHEN I START THE ENGINE IN THE MORNING (COLD), IT MAKES A WHIRRING/GRATING SOUND THAT LASTS JUST A COUPLE OF SECONDS. IT DOESN'T MAKE THIS SOUND AGAIN ALL DAY, EVEN WHEN THE VEHICLE SITS FOR 8+ HOURS. I DON'T KNOW IF IT'S TEMPERATURE-DEPENDENT.

- **NHTSA Id No. 10748315 (August 13, 2015):** I NOTICED A RATTLING NOISE DURING COLD STARTS FROM THE ENGINE THAT CONTINUED WELL INTO THE SUMMER. I REPORTED IT TO MY HONDA DEALER (BILL PAGE/FALLS CHURCH, VA) AND REFERRED TO THE WELL DOCUMENTED VTC ACTUATOR PROBLEM REPORTED ON THE INTERNET BASED ON VIDEO AND AUDIO SIMILARITIES IN THE NOISES I WAS HEARING. THE DEALER BEING AWARE OF THE PROBLEM REFRAINED FROM ANY INVESTIGATION OR CORRECTION UNTIL THEY RECEIVED A CORRECTIVE SOLUTION FROM HONDA. I REPORTED THE PROBLEM TO HONDA AMERICA AND THE DEALER LATER IN 2015 AFTER MY HONDA DEALER TECHNICIAN REPTD NO SOLUTION HAS COME FROM HONDA. I RECEIVED A CALL FROM HONDA REGARDING MY COMPLAINT SUGGESTING THE VTC ACTUATOR PROBLEM IS LIMITED TO ALASKA AND I SHOULD MAKE AN APPOINTMENT WITH MY DEALER TO INVESTIGATE. AS A RESULT TO A SWITCH TO SYNTHETIC OIL AT THE DEALER THE NOISE SEEMS TO HAVE GONE. UNFORTUNATELY THIS DOES NOT GUARANTEE THE ORIGINAL PROBLEM HAS NOT DAMAGED THE ENGINE OR WON'T REAPPEAR IF I DECIDE TO RETURN TO CONVENTIONAL OIL. THE OFFICIAL POSITION BY HONDA VS. THE DEALER SEEMS TO PROMOTE A STAND-OFF TO COMPENSATE FOR A LACK OF A FULLY RELIABLE SOLUTION IN THAT THE DEALER IS TOLD NOT TO INITIATE REPAIRS FOR THIS PROBLEM UNTIL A SOLUTION IS DISTRIBUTED BY HONDA WHILE HONDA CLAIMS THE PROBLEM IS NOT UNIVERSAL AND IS TRYING TO MINIMIZE ITS SCOPE; LEAVING CONSUMERS IN THE MIDDLE

TRYING TO MAKE THEIR CRVS OR OTHER MODEL HONDAS RELIABLE WHILE STILL UNDER WARRANTY. I WILL CONTINUE PURSUIT OF A FIX WITH HONDA AMERICA BUT FEEL NHTSA SHOULD PRESSURE HONDA TO ADDRESS THIS WELL KNOWN AND PUBLICIZED FAULT WITH SOME SORT OF PERMANENT FIX. FOR A MANUFACTURER WHO CLAIMS THEIR VEHICLES ARE HIGHLY RELIABLE HONDA APPARENT DECEPTION REGARDING THIS PROBLEM NEEDS TO BE ADDRESSED AND I HOPE NHTSA FORCES THIS ACTION TO OCCUR. I ALSO PROVIDED NHTSA WITH A COPY OF MY 7/25/15 LETTER TO AMERICAN HONDA.

- **NHTSA Id No. 10783481(October 12, 2015):** ENGINE GRINDING NOISE WHEN CROSSING UP AND DOWN STRUCTURES LIKE BRIDGES. ESPECIALLY ON HIGHWAY WHILE TAKING EXITS. AT A TIMES IT FEELS LIKE THE ENGINE IS ABOUT TO DIE. THIS GRINDING NOISE IS DISTURBING MY CONFIDENCE TO DRIVE THE VEHICLE SAFELY.
  TL* THE CONTACT OWNS A 2013 HONDA CR-V. THE CONTACT STATED THAT WHILE STARTING THE VEHICLE, THE CONTACT HEARD AN ABNORMAL NOISE FROM THE VEHICLE. THE FAILURE RECURRED TWICE. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT THE VTC ACTUATOR NEEDED TO BE REPAIRED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 18,500....UPDATED 02/03/16 *BF
  GRINDING NOISE DURING COLD START UP UPDATED 4/23/18*JB

- **NHTSA Id No. 10795318 (November 22, 2015):** VTC ACTUATOR IS FAILING CAUSING A GRINDING SOUND WHEN STARTING THE VEHICLE. HONDA HAS RECOGNIZED AND ADMITTED TO A DEFECTIVE PART. CONTINUED TO SELL CARS KNOWING THE PARTS WERE DEFECTIVE. 2014-2015 HONDAS HAVE THE SAME ISSUE. HONDA REPORTS IT IS NOT DOING DAMAGE TO THE ENGINE OR ANY COMPONENTS. THEY ARE OFFERING NO ASSISTANCE IN THE MATTER.

- **<u>NHTSA Id No. 10808139 December 23, 2015):</u>** A YEAR AGO I NOTICED AT TIMES A NOISE LIKE I AM TRYING TO START THE VEHICLE WITH IT ALREADY RUNNING. THE OTHER DAY ON INITIAL START IT MADE A LOUDER NOISE. THE BEST I CAN TELL IS A PROBLEM WITH THE VTC ACTUATOR.

- **<u>NHTSA Id No. 10855418 (April 14, 2016):</u>** A LOUD GRINDING NOISE LASTING A FEW SECONDS AFTER INITIAL START UP AFTER CAR HAS BEEN SITTING, I.E., A 'COLD START.' MY HONDA 2013 CRV-EX-L HAS HAD THIS PROBLEM FROM DAY ONE, BRAND NEW! IT'S INTERMITTENT BUT HAPPENS USUALLY ON A COLD START. AFTER QUITE A FEW VISITS TO DEALER THEY ACT PERPLEXED AND NEVER CAN DUPLICATE THE CONDITION! IT ACTUALLY IS THE VTC (VARIABLE TIMING CONTROL). HONDA HAS HAD THIS PROBLEM FOR SEVERAL YEARS ON VARIOUS MODELS OF THEIR VEHICLES, HAS NEVER FIXED THE PROBLEM NOR CONTACTED AFFECTED BUYERS BUT HAS CONTINUED TO BUILD AND SELL THESE VEHICLES WITH A KNOWN DEFECT WITH NO FIX! THEIR ENGINEERS ARE AWARE OF THE PROBLEM, BUT OF COURSE THE SAME ENGINEERS SAY IT CAUSES "NO DAMAGE TO THE VEHICLE!" SHAME ON HONDA, IT ONLY RUINED THEIR REPUTATION! PEOPLE STARE AT YOU AND ASK "WHAT IS THAT NOISE?" WHEN YOU EXPLAIN, IT PUTS HONDA AND THEIR VEHICLES IN A POOR POSITION I.E., LOSS OF REPUTATION AND SALES. I DID INTENSIVE INVESTIGATION ON MY OWN, JUST 'GOOGLE THE PROBLEM, AND YOU WILL BE TAKEN TO 'YOU TUBE' AND MANY OTHER SITES SHOWING THE PROBLEM. TAKE TO THE DEALER A VIDEO AND A COPY OF THE NUMEROUS COMPLAINTS ON THIS AND OTHER SITES! YOU MUST PROVE THE PROBLEM EXISTS!! I CALLED HONDA AMERICA 2 DAYS AGO TO COMPLAIN AND FOUND OUT HONDA JUST THIS YEAR, 2016, FINALLY CAME OUT WITH A 'FIX!' IT IS FOR THE VTC (VARIABLE TIMING CONTROL) . MY CAR FINALLY IS AT THE DEALER BEING REPAIRED. HONDA KNEW ALL ALONG OF THIS PROBLEM AT LEAST FROM 2012 THROUGH 2014 AND EVEN EARLIER MODELS! A RECALL SHOULD BE MANDATED TO MAKE THE REPAIR!! AGAIN SHAME ON HONDA, I PERSONALLY WILL NEVER BUY A HONDA AUTOMOBILE AGAIN. THE FRUSTRATION, EMBARRASSMENT, TIME RUNNING BACK AND FORTH TO THE DEALER, ETC. HAS WORN ME OUT!!

REMEMBER THEIR IS NOW A BULLETIN TO HONDA DEALERS WITH A 'FIX.' BUT THEY MUST DUPLICATE THE PROBLEM! BE SURE TO TAKE A VIDEO WITH SOUND!!

- **NHTSA Id No. 11048704 (November 27, 2017):** HAVE 2013 HONDA CR-V AND WHEN GO TO START IT AFTER SITTING OVERNIGHT MAKES LOUD GRINDING NOISE FOR 1-2 SECONDS. DEALERSHIP SAYS IT'S THE VTC ACTUATOR AND IS A KNOW PROBLEM BUT NOT RECALL HAS BEEN ISSUED. THEY WANT 500 BUCKS TO FIX THE ISSUES SINCE CAR OF COURSE ISN'T UNDER WARRANTY AND WON'T WORK WITH ME AT ALL. VERY UNPROFESSIONAL IN MY OPINION OF HONDA WITH AN ISSUES THAT IS KNOW AND COMMON.

- **NHTSA Id No. 11053697 (December 9, 2017):** SPORADIC GRINDING NOISE AFTER SETTING OVERNIGHT. TOOK TO DEALER, THEY SAID WOULD HAVE TO HEAR IT BEFORE THEY COULD DO ANYTHING. LEFT UNTIL THE NEXT DAY. NO SATISFACTION ON MY PART. STILL DOES IT. IT WAS UNDER WARRANTY WHEN TAKEN IN, BUT IS OUT OF WARRANTY NOW.

- **NHTSA Id No. 11057819 (January 1, 2018):** ENGINE MAKES A RATTLE NOISE ON COLD START UP. CAR WAS TAKEN TO DEALERSHIP AND WAS TOLD THE VTC ACTUATOR WAS DEFECTIVE AND WAS REPLACED UNDER WARRANTY AT 83000 MILES. THIS WAS IN AUGUST OF 2017. IT IS NOW JANUARY OF 2018, CAR NOW HAS 90355 MILES AND THE RATTLE NOISE HAS RETURNED. WILL TAKE THE CAR BACK TO THE DEALERSHIP THIS WEEK TO SEE WHAT WILL BE DONE NEXT. FROM WHAT I HAVE RESEARCHED, HONDA HAS NOT COME UP WITH A REAL FIX. THIS PROBLEM HAS BEEN GOING ON FOR SEVERAL YEARS FOR PREVIOUS MODELS. COME ON NHTSA, PUT SOME HEAT ON THESE GUYS.

- **NHTSA Id No. 11062203 (January 11, 2018):** ON COLD START THE ENGINE MAKES A LOUD GRINDING NOISE. MY VEHICLE ONLY HAS 28,500 MILES ON THE CAR.

- **NHTSA Id No. 10676638 (January 21, 2015):** ON COLD DAYS I HEAR GRINDING NOISE WHEN I START MY CAR, FEW SECOND NOISE

THEN ITS FINE. I NOTICED IT STARTED IN DECEMBER WHEN THE COLD WEATHER HITS TEXAS. IT DOES NOT HAPPEN DAILY ONLY ON COLD DAYS AS CAR SITS IN DRIVEWAY. SOME DAYS IT WILL BE COLD AND IT WILL BE FINE AND OTHER DAYS ANOTHER COLD DAY AND IT WILL HAPPEN FOR A FEW SECONDS. MY CAR HAS SLIGHTLY OVER 8000 MILES. I FIND THIS TOO SOON TO HAVE ANY ISSUES. I TOOK IT TO LOCAL HONDA DEALERSHIP JANUARY 16 WHERE CAR SAT OVER NIGHT TO DUPLICATE THE SOUND AND THE CAR DID NOT MAKE THAT NOISE. THE WEATHER WAS IN THE 40'S AND NOISE COULD NOT BE HEARD. MY CAR WAS STILL AT DEALERSHIP ON JANUARY 19 AND AGAIN NO SOUND WAS HEARD FROM CERTIFIED HONDA TECH. I OPENED UP HONDA CARE TICKET FOR A SOLUTION AND A PUSH FROM THEM TO REPLACE THE VTC ACTUATOR. THE TECH PLAYED DUMB AND SAID I WAS THE FIRST OWNER TO HAVE THIS COMPLIANT AND THEREFORE COULD NOT PIN POINT THE PROBLEM AND COULD NOT FIX SOMETHING HE DID NOT KNOW WHAT IT COULD BE. I TOOK MY CAR FROM THEM AFTER SITTING THERE SINCE FRIDAY, SATURDAY, SUNDAY AND MONDAY JAN 19. HONDA CARE DID NOT PUSH THE ISSUE TO THE DEALERSHIP SO I AM CONSIDERING TRADING IN MY CAR. I CANNOT BE HELD ACCOUNTABLE FOR A FAULTY HONDA PROBLEM. NOW I THE CONSUMER HAVE BEEN DUPED BY THIS IGNORANCE AND LETTING THIS KNOWN ISSUE JUST SIT AROUND AND GET BIGGER WITH CONSUMERS. *TR

- **NHTSA Id No. 10690867 (February 26, 2015):** EVERY DAY WHEN IT IS REALLY COLD OUTSIDE AND THE TEMPERATURES ARE 20 BELOW OR SO, THERE IS A GRINDING NOISE WHEN I START THE CAR UP. IT ONLY HAPPENS WHEN IT IS REALLY COLD OUTSIDE. DON'T ACTUALLY KNOW WHERE IT IS COMING FROM UNDER THE HOOD. IT ONLY LAST ABOUT A SECOND OR TWO.

- **NHTSA Id No. 10693136 (March 9, 2015):** I GET A HARSH GRINDING 'METAL-ON-METAL' SOUND FROM THE CAM/TIMING CHAIN, TOP OF THE ENGINE WHEN TEMPS BELOW 40 DEGREES. VISITED WITH THE DEALER I PURCHASED AT, DIDN'T EVEN START A WORK TICKET WHEN I TOLD HIM WHAT IT WAS DOING. STATED IT WAS THE VTC ACTUATOR PROBLEM ,THEY ALL HAVE IT, REPLACING THE PART WON'T FIX IT, JUST HAVE

TO LIVE WITH IT. WENT TO 2ND DEALER, SAID SAME THING BUT STARTED A WORK TICKET. GAVE ME A COPY OF A HONDA "TECH LINE SUMMARY ARTICLE" ENGINE RATTLES AFTER COLD SOAK STARTUP. AFFECTED VEHICLES, 2008-12 ACCORD, 2012-15 CROSSTOUR, 2012-14 CR-V, WE'RE CURRENTLY WORKING ON A SOLUTION BUT HAVE NO RECOMMENDED DEALER REPAIR AT THIS TIME. CONTACTED HONDA MOTOR CO. TO FILE A COMPLAINT, WE WOULD LIKE TO FIX YOUR CAR, HOW? YOU DON'T HAVE A FIX, PROBLEM SINCE 2008. ASKED FOR MY PURCHASE PRICE TO BE REIMBURSED MINUS USAGE. WAITING FOR RESPONSE FROM HONDA. WILL PURSUE DISPUTE RESOLUTION/ARBITRATION IF NEEDED. *TR

- **NHTSA Id No. 10694991 (March 17, 2015):** WHEN YOU COLD START THE CAR IT MAKES A GRINDING NOISE. HAVE TAKEN IT IN TO THE DEALER THREE TIMES AND THEY CAN NEVER DUPLICATE THE NOISE. I TAKE IT HOME AND IT DOES IT AGAIN THE NEXT DAY EACH TIME. I RECORDED THE NOISE AND TOOK IT TO THE DEALER. THEY ORIGINALLY TOLD ME THAT THEY DIDN'T KNOW WHAT IT WAS. THE THIRD TIME I TOOK IT IN THEY CLAIMED HONDA AMERICA WAS AWARE OF THE PROBLEM AND WERE WORKING ON IT. AFTER WAITING 6 WEEKS FOR RESOLUTION, I CALLED THE DEALER AND WAS TOLD THE SAME THING. I REQUESTED THE NUMBER TO HONDA AMERICA AND CALLED. I WAS TOLD BY HONDA AMERICA THAT THEY DIDN'T DEEM THIS PROBLEM A DEFECT AND THEY WOULD NOT FIX THE PROBLEM. I AM TRYING TO FIND OUT WHAT RECOURSE I HAVE. IF YOU LOOK ON THE DIFFERENT BLOGS AND SITES ONLINE...THEY DO HAVE A PROBLEM WITH NUMEROUS OTHER HONDA VEHICLES. ANY HELP YOU CAN GIVE ME IS APPRECIATED. *TR

- **NHTSA Id No. 10723387 (June 4, 2014):** THERE IS A GRINDING NOISE/SOUND AT COLD START. VEHICLE IS GARAGED BUT DURING THE COLDER WEATHER MONTHS, THE STARTER HAS A TERRIBLE GRINDING SOUND. THIS OCCURRED WITH ONLY ABOUT 1200 MILES PUT ON THE CAR. IT WAS PURCHASED NEW IN MID-DECEMBER, 2013 (2014 MODEL) AND THE GRINDING SOUND FIRST OCCURRED IN LATE FEBRUARY, 2014. WAITED A FEW MORE MONTHS AND THEN CONTACTED LOCAL HONDA DEALERSHIP TO BRING IN THE CAR TO HAVE THEM

DUPLICATE THE PROBLEM. THIS WAS DONE ON JANUARY 9TH, 2015. DEALERSHIP SAID THEY WERE AWARE OF SOME OTHER 2014 CRV'S HAVING SAME/SIMILAR PROBLEM AS MINE. THEY FURTHER STATED THAT THE PROBLEM IS A VTC-ACTUATOR AND THAT HONDA HAD BEEN AWARE OF IT FOR SOME TIME. I WAS TOLD THAT HONDA HAS TO RE-ENGINEER THE PART AND THAT IT HOPEFULLY BE READY BY THE SUMMER OF 2015. STILL NO WORD FROM THE DEALERSHIP ON THE STATUS OF THE RE-ENGINEERED PART BEING AVAILABLE AT THIS TIME. I WILL FOLLOW UP WITH THEM TODAY.

- **NHTSA Id No. 10795269 (November 21, 2015):** ENGINE HAS A COLD START RATTLE, HONDA SAYS IT IS THE VTC ACTUATOR. HONDA HAS CHANGED IT ONCE AND IT STILL MAKES THE NOISE. HONDA SAYS THAT ARE WORKING ON A FIX, BUT IT LOOKS LIKE THEY HAVE WORKING ON IT SINCE 2012.

- **NHTSA Id No. 1080883 (December 7, 2015):** WHEN STARTING THE CAR, ESPECIALLY AFTER IT SITTING FOR A WHILE, IT WILL MAKE A RATCHETING SOUND AFTER STARTING. I CALLED THE DEALER WHERE PURCHASED FROM AND WAS TOLD IT WAS A VTC ACTUATOR PROBLEM THAT THERE IS NO FIX FOR. WAS TOLD THEY ARE WORKING ON IT AND WOULD HAVE A FIX IN FEBRUARY. LOOKED UP THIS PROBLEM ONLINE AND SAW THIS HAS BEEN A PROBLEM WITH HONDA'S SINCE 2008 ALONG WITH NUMEROUS VIDEOS OF THE SAME SOUND.

- **NHTSA Id No. 10817267 (December 31, 2015):** MY VEHICLE MAKES A TERRIBLE SOUND UNDER THE HOOD UPON STARTING WHEN IT IS COLD. I RESEARCHED IT ONLINE AND DISCOVERED IT IS THE VTC ACTUATOR VALVE (MOST LIKELY). TOOK IT TO DEALERSHIP, LET IT OVERNIGHT SO THEY WOULD HEAR IT AFTER SETTING. THEY CLAIM NO NOISE UPON STARTING IT. I AM CONCERNED AT SOME POINT ENGINE PARTS ARE BEING DAMAGED. THE NOISE BEGAN WITHIN 2 MONTHS OF OWNERSHIP. WENT TO ANOTHER HONDA DEALER, THEY SAID "HONDA PROBABLY DOES KNOW ABOUT THIS BUT THERE IS NO REPAIR/RECALL ORDER ISSUED SO THEY WON'T REPAIR IT. CAR WAS PURCHASED NEW.

- **NHTSA Id No. 10817445 (January 2, 2016):** WHEN STARTING THE CAR, ESPECIALLY AFTER IT SITTING FOR A WHILE, IT WILL MAKE A RATCHETING SOUND AFTER STARTING. I CALLED THE DEALER WHERE PURCHASED FROM AND WAS TOLD IT WAS A VTC ACTUATOR PROBLEM THAT THERE IS NO FIX FOR. WAS TOLD THEY ARE WORKING ON IT AND WOULD HAVE A FIX IN FEBRUARY.

- **NHTSA Id No. 10822402 (January 26, 2016):** WITH COLD STARTS (STARTING THE ENGINE FIRST THING IN THE MORNING) THERE IS A GRINDING RUMBLE FROM UNDER THE FRONT OF THE CAR THAT LASTS A SECOND OR TWO. THIS HAS BEEN HAPPENING SINCE I BOUGHT THE CAR, AND THE SERVICE DEPT HAS SAID NOT TO WORRY ABOUT IT. YESTERDAY, I TOOK THE CAR IN TO HAVE IT EXAMINED AND REPAIRED, AND THE HONDA SERVICE MANAGER CONFIRMED THAT THE NOISE WAS COMING FROM A DEFECTIVE VTC ACTUATOR. HE WENT ON TO SAY THAT HONDA IS CONTINUING TO PRODUCE THE SAME DEFECTIVE ACTUATOR THEY HAVE PRODUCED FOR THE PAST 8 YEARS AND THAT THE HONDA CORPORATION WILL NOT ALLOW DEALER SERVICE DEPARTMENTS TO REPLACE THEM. "THEY'RE ALL FAULTY, SO IT WOULDN'T MATTER."

  THIS DEFECT IN A CRITICAL ENGINE PART MUST BE ADDRESSED AND THE PART REPLACED.

- **NHTSA ID No. 10822511 (January 27, 2016):** GRINDING SOUND AT START UP ON COLD MORNINGS,PROBABLY FAULTY VTC ACTUATOR WHICH HONDA WILL OR CANNOT FIX. THIS GRINDING HAS TO BE DOING SOME KIND OF DAMAGE THAT WILL BE MORE SERIOUS LATER TO MY VEHICLE.

- **NHTSA ID No. 10824028 (February 3, 2016):** GRINDING SOUND AT ENGINE START UP IN COLD WEATHER. IT HAPPENS EVERY WINTER.

- **NHTSA ID No. 10854563 (April 9, 2016):** GRINDING NOISE LASTING A FEW SECONDS DURING IGNITION START UP AFTER CAR HAS BEEN SITTING OVERNIGHT. BEGAN WHEN CAR WAS

6 MONTHS OLD. HAPPENS ALMOST DAILY WHEN TEMPS ARE
BELOW 60

- **NHTSA ID No. 10939065 (December 27, 2016):** ENGINE EMITS
RATTLE/GRINDING SOUND FOR 1-3 SECONDS ON COLD START
IN                          COLD                          WEATHER.

  ## VIN PASSED ## HONDA CRV 2014 ## *TR

- **NHTSA ID No. 10939136(January 2, 2017):** THERE IS A LOUD
GRINDING NOISE LASTING APPROXIMATELY 2 SECONDS AT
COLD STARTUP. THIS HAS HAPPENED ABOUT 6 TIMES IN THE
LAST 6 MONTHS. MY VEHICLE HAS ONLY 22700 MILES. I'M
CONCERNED THIS IS CAUSING DAMAGE TO THE ENGINE.

- **NHTSA ID No. 10984366 (May 8, 2017):** OUR 2014 HONDA CRV HAS
BEEN MAKING A CLATTERING NOISE AT START UP FOR THE
PAST SEVERAL MONTHS. APPARENTLY THERE IS A WELL
KNOW DEFECT WITH THE VTC ACCURATOR AND YET HONDA
HASN'T ALERTED CONSUMERS TO THIS DEFECT OR ISSUED A
RECALL. I AM WRITING YOU TO ALERT YOU OR TO ADD TO
OTHER COMPLAINTS YOU HAVE RECEIVED REGARDING THIS
ISSUE. IF THEY DON'T NOTIFY CONSUMERS, THEN THE
WARRANTY PERIOD CAN GO BY AND THEN THE CONSUMER IS
LEFT WITH THE BILL. THANK YOU.

- **NHTSA ID No. 11022148 (September 1, 2017):** CAR HAS A LOUD
RATTLE OR GRINDING SOUND ON A COLD STARTUP. LAST A
COUPLE OF SECONDS THEN GOES AWAY. HAS DONE THIS FOR
3 YEARS, SINCE I GOT IT.

- **NHTSA ID No. 11039802 (October 25, 2017):** LOUD GRINDING
SOUND WHEN STARTING THE CAR IN THE GARAGE. THIS HAS
HAPPENED IN THE PAST ON COLD DAYS BUT TEMPERATURE
TODAY WAS IN THE 50S. I AM CONCERNED ABOUT DAMAGE
FROM THIS AS THE DAYS HERE IN WISCONSIN ARE ONLY
GOING TO GET COLDER. I AM KEEPING A RUNNING LIST OF
OCCURRENCES      AND      DOCUMENTING      DATES      AND
TEMPERATURES.

- **NHTSA ID No. 11052815 (December 6, 2017):** ON COLD START ENGINE MAKES LOUD GRINDING SOUND. VEHICLE WAS PURCHASED IN JANUARY 2016 AND HAS CONTINUOUSLY DONE THIS ON COLD MORNINGS

- **NHTSA ID No. 11054687 (December 14, 2017):** ENGINE MAKES A GRINDING SOUND UPON START UP ON COLD MORNINGS FOR A FEW SECONDS WHILE PARKED. THIS HAS BEEN A PROBLEM SINCE I PURCHASED CAR. HAVE TAKEN TO DEALER NUMEROUS TIMES, BUT THEY CANNOT TELL ME WHAT THE PROBLEM IS. NUMEROUS COMPLAINTS FROM OWNERS ABOUT THE VTC ACTUATOR, BUT THIS WAS NEVER MENTIONED TO ME. CONCERNED THIS WILL LEAD TO PROBLEMS IF NOT ADDRESSED.

- **NHTSA ID No. 11057647 (December 30, 2017):** RATTLING NOISE FOR 1 OR 2 SECONDS WHEN STARTING THE VEHICLE AT TEMPERATURES AROUND 35 DEGREES F.

- **NHTSA ID No. 11064271 (January 20, 2018):** RATTLING NOISE FOR 1 TO 3 SECONDS WHEN STARTING THE VEHICLE AT TEMPERATURES AROUND 35 DEGREES F. THIS OCCURS RANDOMLY SINCE PURCHASE. HAVE TALKED WITH DEALER WITH NO RESOLUTION.

- **NHTSA ID No. 11065218 (January 18, 2018):** ON COLD START, THE ENGINE GRINDS FOR ABOUT 2 SECONDS. I BOUGHT THE VEHICLE NEW AND THIS HAS HAPPENED PERIODICALLY SINCE. DEALER SERVICE SHOP USUALLY CANNOT REPLICATE IT BECAUSE IT ONLY HAPPENS ON COLD START AFTER SITTING OVERNIGHT. FINALLY GOT THEM TO REPLICATE THE NOISE IN JANUARY 2016 AND DIAGNOSED AS A VTC ACTUATOR PROBLEM. APPARENTLY A VERY WELL KNOWN PROBLEM AND "THEY FIX THESE ALL THE TIME, KNOWN ISSUE". A WEEK LATER THE NOISE STARTED AGAIN AND NOW THE DEALER CAN'T REPLICATE AGAIN. I ONLY HAVE 10 MONTHS LEFT ON MY WARRANTY AND THEY SAY THEY WON'T REPLACE IT AGAIN BECAUSE THEY CAN'T REPLICATE IT. IF IT'S A KNOWN ISSUE, THIS NEEDS TO BE RECALLED AND FIXED AGAIN ASAP.

WORRIED ABOUT THE LONGEVITY OF THE ENGINE, GIVEN THIS HAS BEEN GOING ON SINCE DAY ONE.

- **NHTSA ID No. 11074647 (February 24, 2018):** ENGINE METAL RATTLING NOISE ON COLD START UP. VERY DISTURBING. ENGINE HAS A ROUGH START AS RESULT.

- **NHTSA ID No. 11076209 (May 5, 2018):** GRINDING SOUND FROM ENGINE DURING COLD START. GRINDING SOUND LAST A FEW SECONDS WHEN ENGINE IS COLD.

- **NHTSA ID No. 11139305 (October 9, 2018):** VTC ACTUATOR NEEDS TO BE REPLACED AT 86,000 MILES. TOOK TO DEALER COST WILL BE $1000.00 NOT COVERED UNDER ANY RECALLS ALTHOUGH THERE HAVE BEEN SEVERAL COMPLAINTS AND REPAIRS FOR THIS PARTICULAR YEAR, MAKE AND MODEL

- **NHTSA ID No. 11162187 (December 18, 2018):** GRINDING SOUND FOR 1-2 SECONDS AFTER THE ENGINE STARTS ESPECIALLY DURING COLD START. WHEN I GOOGLED IT, SAME SOUND THAT AFFECTING VTC ACTUATOR.

- **NHTSA ID No. 11172725 (January 29, 2019):** TL* THE CONTACT OWNS A 2014 HONDA CR-V. WHEN THE VEHICLE WAS COLD STARTED, THE CONTACT HEARD AN INTENSE GRINDING NOISE COMING FROM THE ENGINE. THE NOISE ONLY LASTED FOR A FEW SECONDS, BUT THE CONTACT WAS CONCERNED OF ENGINE DAMAGE. THE CONTACT RESEARCHED THE INTERNET AND FOUND FORUMS REGARDING THE FAILURE. THE CONTACT SPOKE WITH O'DONNELL HONDA (8620 BALTIMORE NATIONAL PIKE, ELLICOTT CITY, MD 21043, (410) 461-5000) WHILE THE WARRANTY WAS STILL VALID; HOWEVER, THERE WAS NO REMEDY AT THE TIME. THE WARRANTY HAD EXPIRED AND THE DEALER WOULD NOT ASSIST WITH THE REPAIR. THE MANUFACTURER STATED THAT NOTHING COULD BE DONE BECAUSE THE WARRANTY WAS EXPIRED. THE FAILURE MILEAGE WAS 30,000.

- **NHTSA ID No. 11190244 (March 20, 2019):** CRV WAS RATTLING FOR ABOUT A WEEK. STARTED ONLY IN THE MORNING IN THE

COLD AND PROGRESSIVELY GOT WORSE. WE WERE SUPPOSED TO TAKE THE CAR IN TO THE MECHANIC THE NEXT DAY BUT AS MY WIFE WAS DRIVING ON THE HIGHWAY THE CAR COMPLETELY SHUT OFF. WE HAD IT TOWED TO THE MECHANIC AND HE SAID IT'S ENGINE FAILURE AND HAD NO OIL. WE HAD NO OIL LIGHT COME ON AND WE GET ROUTINE OIL CHANGES. CALLED HONDA TO SEE IF THERE WAS A RECALL AND THEY SAID NO AND OFFERED NO HELP. NOW I'M STUCK WITH A WORTHLESS 5 YR OLD CAR THAT I STILL OWE MONEY ON. THERE ARE SO MANY COMPLAINTS ABOUT THIS WHY HASN'T A RECALL BEEN ISSUED? WHY IS NOBODY INVESTIGATING THIS????

- **NHTSA ID No. 1110377 (May 28, 2019):** RATTLING NOISE FOR 1 TO 3 SECONDS WHEN STARTING THE VEHICLE THIS OCCURS RANDOMLY SINCE PURCHASE. HAVE TALKED WITH DEALER WITH THEY SAY ITS STARTER ($863 NOT UNDER WARRANTY. IF I TURN KEY AND LET SIT FOR A FEW MINUTES AND THEN START THE ENGINE - NO METAL NOISE. CONTACT AMERICA HONDA - NO CALL OR COMMUNICATION YET

- **NHTSA ID No. 11242718 (August 8, 2019):** I'M HAVING THE INFAMOUS VTC ACTUATOR GRINDING ON START-UP THAT HONDA HAS DETAILED IN SERVICE BULLETIN #16-012. I'VE CONTACTED HONDA REPEATEDLY ABOUT THE ISSUE BUT THEY REFUSE TO GIVE ME ANY INFORMATION ABOUT IT.

- **NHTSA ID No. 11281898 (November 22, 2019):** VEHICLE MADE GRINDING NOISE UPON START-UP OVER SEVERAL MONTHS. HONDA CLAIMED IT IS NOT DAMAGING THE ENGINE AND THERE IS NO FIX. ENGINE CONTINUED TO GRIND AND MY CAR BEGAN HAVING OIL PROBLEMS. HONDA STILL SAID THERE WAS NO ISSUE AND THEY WERE NOT RELATED. CAR CONTINUED GRINDING UNTIL THIS WEEK WHEN ALL LIGHTS ON THE DASHBOARD LIT UP. I TOOK MY HONDA AND WAS TOLD THE TIMING CHAIN IS STRETCHED AND IT NEEDS ANOTHER VTC ACTUATOR REPLACEMENT (THIS WAS FIXED UNDER WARRANTY THREE YEARS AGO). THE CAR COULD HAVE STALLED WHILE DRIVING. THIS IS A KNOWN ISSUE

THAT HONDA IS REFUSING TO ACKNOWLEDGE OR RECALL IN HONDA CR-V'S. THEY CHARGED ME $1800 TO FIX AN ISSUE KNOWN TO THEM. THIS COULD HAVE RESULTED IN BODILY INJURY TO MYSELF OR OTHERS IF THE CAR HAD STALLED WHILE DRIVING. HONDA SHOULD TAKE RESPONSIBILITY FOR THEIR FAULTY ENGINES. THERE ARE MULTIPLE COMPLAINTS ON THIS SAME ISSUE.

- **NHTSA ID No. 11271633 (October 28, 2019):** I'M HAVING CONTINUED ISSUES WITH THE ENGINE'S VTC RATTLING AND RANDOM ENGINE SPEEDS. IT HAS BEEN REPAIRED ONCE BUT THE RATTLE AHAS RETURNED AND IS WORSE. NO SERVICE LIGHTS ARE PRESENT.

98.     Customers have reported the VTC Defect in the Class Vehicles to Honda directly and through its dealers.  Defendants are fully aware of the VTC Defect contained in the Class Vehicles.   Nevertheless, Defendants actively concealed the existence and nature of the Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter.  Honda:

a.     failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the VTC Defect;

b.     failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their VTC Actuators were not in good working order, were defective, and were not fit for their intended purpose; and

c.     failed to disclose and actively concealed the fact that the Class Vehicles and their VTC Actuators were defective, despite the fact that Defendants learned of the VTC Defect before they placed the Class Vehicles in the stream of commerce.

99.     Defendants have deprived Class Members of the benefit of their bargain, exposed them all to a material Defect, and caused them to expend

money at their dealerships or other third-party repair facilities and/or take other remedial measures related to the VTC Defect contained in the Class Vehicles. Moreover, as discussed in greater detail above, the VTC Defect damages other critical internal engine components.  As a result, Class Members whose VTC Actuators are replaced may still suffer the consequences of the impact of the VTC Defect on their vehicle's engine.  Because many Class Members, like Plaintiffs, are current owners who rely on their vehicles on a daily basis a remedial scheme which extends the warranty on all components potentially impacted by the VTC Defect is necessary to provide the future protection to make Class Members whole.

100.   Defendant has not recalled the Class Vehicles to repair the VTC Defect and has not offered to its customers a suitable repair or replacement of parts related to the VTC Defect free of charge.

101.   Class Members have not received the value for which they bargained when they purchased the Class Vehicles.

102.   As a result of the VTC Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles compared to the non-defective vehicles that they intended to purchase.  The Class Vehicles' VTC Actuators are part of the complex and expensive vehicle timing system.   The cost of replacing a VTC Actuator exceeds $500 on average—in Quackenbush Honda stipulated that the cost of repair was $544 in Illinois and $532 in California.  Case No. 3:20-cv-05599, Dkt. No. 292 (N.D. Cal. Aug. 1, 2023).  The total cost of repair, moreover, can easily exceed $1,000 when other components in this system are damaged.  That is a cost that Plaintiffs and Class Members will have to bear as the price of continued ownership of the defective Class Vehicles.

103.   Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's VTC Actuator and related components are not defective and will not malfunction while operating the vehicle as it is intended.  Plaintiffs and Class Members further expect and assume that Honda will not sell or lease vehicles with known material defects, such as the VTC Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable repair non-defective replacement.

## VI.   TOLLING OF THE STATUTE OF LIMITATIONS & NOTICE

104.   Plaintiffs and the other Class Members were not reasonably able to discover the VTC Defect, despite their exercise of due diligence.

105.   Despite their due diligence, Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and VTC Actuators was concealed from them.

106.   Notably, Honda did more than simply fail to disclose the VTC Defect to consumers—Honda actively concealed evidence of the Defect. Notwithstanding its knowledge that the VTC Defect harms other critical engine components including the timing chain and timing chain tensioner, Honda told its dealers and consumers and that the VTC rattle would not harm their vehicles. Honda did so to create the false narrative that the rattle is no more than a harmless, fleeting noise.

107.   When consumers called Honda's customer service line they were told that the VTC rattle would not harm their vehicles, even though Honda had concluded prior to the Class Period in 2011, on the basis of controlled Honda study, that the VTC Defect will cause the timing chain tensioner to fail.  Honda's dealers similarly told consumers that the VTC Defect was harmless even though

they knew that the Defect was damaging internal engine components based on the condition of vehicles brought to them for repair.

108.   Hence, any applicable statute of limitation, if any, has been tolled by Honda's knowledge, active concealment, and denial of the facts alleged herein.   Honda is further estopped from relying on any statute of limitation because it concealed  the defective nature of the Class Vehicles and their VTC Actuators

109.   On February 28, 2022, and May 19, 2023, Plaintiffs properly gave notice as to all causes of action for which notice may be required under applicable law, demanding that Honda acknowledge the VTC Defect and take appropriate action.  As of the date of the filing of this Complaint, Honda has failed to take any action and continues to deny the VTC Defect.

## VII.   CLASS ACTION ALLEGATIONS

110.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3).   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

111.   The Classes are defined as:

**California Class:** All persons who purchased or leased any Class Vehicle in the State of California, excluding all persons who are members of the California Repair Class certified in *Quackenbush, et al. v. American Honda Motor Company, Inc., et al*., No. 3:20-cv-05599 (N.D. Cal.).

**Colorado Class:** All persons who purchased or leased any Class Vehicle in the State of Colorado.

**Connecticut Class:** All persons who purchased or leased any Class Vehicle in the State of Connecticut.

**Florida Class:** All persons who purchased or leased any Class Vehicle in the State of Florida.

**Maryland Class:** All persons who purchased or leased any Class Vehicle in the State of Maryland.

**Massachusetts Class:** All persons who purchased or leased any Class Vehicle in the State of Massachusetts.

**Minnesota Class:** All persons who purchased or leased any Class Vehicle in the State of Minnesota.

**Missouri Class:** All persons who purchased or leased any Class Vehicle in the State of Missouri.

**New Jersey Class:** All persons who purchased or leased any Class Vehicle in the State of New Jersey.

**New York Class:** All persons who purchased or leased any Class Vehicle in the State of New York.

**North Carolina Class:** All persons who purchased or leased any Class Vehicle in the State of North Carolina.

**Ohio Class:** All persons who purchased or leased any Class Vehicle in the State of Ohio.

**Pennsylvania Class:** All persons who purchased or leased any Class Vehicle in the State of Pennsylvania.

**Texas Class:** All persons who purchased or leased any Class Vehicle in the State of Texas.

**Washington Class:** All persons who purchased or leased any Class Vehicle in the State of Washington.

112. Excluded from the Classes are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have

suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the definition of the Classes, and to add further subclasses, if discovery and further investigation reveal that the Class and Subclasses should be expanded or otherwise modified.

113.  Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from, inter alia, information and records in Defendants' possession, custody, or control.

114.  Typicality: The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendant which is subject to the VTC Defect.  The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct because, among other reasons, their vehicles have diminished in value as a result of the VTC Defect, their vehicles do not perform properly, and they have incurred or will incur the cost of repairing or replacing their malfunctioning VTC Actuator and related parts as a result of the VTC Defect.  Further, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

115.  Commonality: There are numerous questions of law and fact common to Plaintiffs and the Classes that predominate over any question affecting only individual Class Members.  These common legal and factual questions include the following:

a.    whether the Class Vehicles suffer from the VTC Defect;

b.   whether the VTC Defect constitutes a safety risk;

c.   whether the VTC Defect relates to the central functionality of the Class Vehicles;

d.   whether Defendants know about the VTC Defect and, if so, how long Defendants have known of the Defect;

e.   whether the defective nature of the Class Vehicles' VTC Actuators constitutes a material fact that would influence a reasonable consumer's purchasing decision;

f.   whether Defendants had and have a duty to disclose the defective nature of the Class Vehicles' VTC Actuators to Plaintiffs and the other Class Members;

g.   whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

h.   whether Defendants knew or reasonably should have known of the VTC Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

i.   Whether Defendants: (1) violated the consumer protection laws of California, Colorado, Connecticut, Florida, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas, and Washington; (2) have been unjustly enriched; and (3) are liable for fraudulent omission.

116.   Adequate Representation:   Plaintiffs will fairly and adequately protect the interests of the Class Members.   Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and

automobile defect class actions, and Plaintiffs intend to prosecute this action vigorously.

117.   <u>Predominance and Superiority:</u>  Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

# **FIRST CAUSE OF ACTION**

(Violation of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq., on behalf of the California Class)

118.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

119.   Plaintiff Larson brings this cause of action on behalf of herself and the California Class.

120.   Honda is a "person" as defined by Cal. Civ. Code § 1761(c).

121.   Plaintiff Larson and Class Members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

122.   By failing to disclose and concealing the defective nature of the Class Vehicles' VTC Actuators from Plaintiff and Class Members, Defendants violated Cal. Civ. Code § 1770(a), by representing that the Class Vehicles had

characteristics and benefits that they do not have; that the Class Vehicles were of a particular standard, quality, or grade when they were of another; and advertising the Class Vehicles with the intent not to sell them as advertised.  See Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

123.  Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a safety risk on the public.

124.  Defendants knew that the Class Vehicles' VTC Actuator suffered from an inherent defect, would fail prematurely and were not suitable for their intended use.

125.  Defendants were under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles' VTC Actuators and the associated repair costs because:

    a.  Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' VTC Actuators;

    b.  Plaintiff and Class Members could not reasonably have been expected to learn or discover that their VTC Actuators have a safety defect until after they purchased the Class Vehicles;

    c.  Defendants knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the VTC Defect; and

    d.  Defendants actively concealed the defective nature of the Class Vehicles' VTC Actuators from Plaintiff and Class Members at the time of sale and thereafter.

126.   By failing to disclose the VTC Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

127.   The facts concealed or not disclosed by Defendants to Plaintiff and Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.  Had Plaintiff and Class Members known that the Class Vehicles' VTC Actuator was defective, they would not have purchased the Class Vehicles or would have paid less for them.

128.   Plaintiff and Class Members are reasonable consumers who do not expect that their vehicles will suffer from a VTC Defect.  That is, the reasonable and objective consumer expectation that a vehicle's timing system components, including the VTC Actuator, will function properly.

129.   As a direct and proximate result of Defendants' unfair or deceptive acts and practices, Plaintiff and Class Members have been harmed and have suffered and will continue to suffer actual damages in that the Class Vehicles and their VTC Actuator are defective and require repairs or replacement and are worth less than they would be if they had a non-defective VTC Actuator.

130.   By letter dated April 29, 2022, and sent via certified mail, Plaintiff provided Defendants with notice of its alleged violations of the CLRA pursuant to California Civ. Code § 1782(a) and demanded that Defendants rectify the problems associated with the behavior detailed above.  As of the filing of this complaint, Defendants have failed to agree to Plaintiffs' demands and have failed to give notice of the VTC Defect to all affected consumers, as required by California Civ. Code § 1782.

131.   Accordingly, Plaintiff seeks an order enjoining the acts and practices described above.

132.   Plaintiff additionally seeks actual damages, restitution, statutory and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper under section 1780(a) of the CLRA pursuant to Civil Code Section 1782(d), due to Defendants' failure to rectify or agree to adequately rectify its violations as detailed above.

## **SECOND CAUSE OF ACTION**

(Violation of Unfair Competition Law, California Bus. & Prof. Code § 17200 et seq., on behalf of the California Subclass)

133.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

134.   Plaintiff Larson brings this cause of action on behalf of herself and the California Class.

135.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

136.   Defendants knew that the Class Vehicles' VTC Actuators suffered from an inherent defect, was defectively designed and/or manufactured, would fail prematurely, and was not suitable for its intended use.

137.   In failing to disclose the VTC Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in a fraudulent business act or practice within the meaning of the UCL.

138.   Defendants were under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles' VTC Actuator because:

a.  Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' VTC Actuators;

b.  Plaintiff and Class Members could not reasonably have been expected to learn or discover that their VTC Actuators have a safety defect until after they purchased the Class Vehicles;

c. Defendants knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the VTC Defect; and

d. Defendants actively concealed the defective nature of the Class Vehicles' VTC Actuators from Plaintiff and Class Members at the time of sale and thereafter.

139.   The facts concealed or not disclosed by Defendants to Plaintiff and Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase Defendants' Class Vehicles, or to pay less for them.  Had Plaintiff and Class Members known that the Class Vehicles suffered from the VTC Defect described herein, they would not have purchased the Class Vehicles or would have paid less for them.

140.   Defendants continued to conceal the defective nature of the Class Vehicles and their VTC Actuators even after Class Members began to report problems.  Indeed, Defendants continue to cover up and conceal the true nature of this systematic problem today.

141.   Defendants' omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of the UCL, in that Defendants' conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Despite its knowledge of the VTC Defect and the risks that it poses to the Class Vehicles' timing systems since 2011 at the latest, Honda rolled out the Class Vehicles without disclosing the problem to meet its own internal schedules and revenue goals.  The utility of this self-serving conduct, which only benefits Honda and serves no public good, is greatly outweighed by the gravity of the potential harm to consumers.  Plaintiff also asserts a violation of public policy arising from Defendants' withholding of material safety facts from consumers, including withholding knowledge that the

VTC Defect causes damage to the timing chain, timing chain tensioner, and timing system as a whole—carrying the potential for catastrophic engine failure. Defendants' violations of consumer protection and unfair competition laws resulted in harm to consumers.

142.   Defendants' omissions of material facts, as set forth herein, also constitute unlawful business acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

143.   Thus, by its conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

144.   Defendants' unfair and deceptive acts and practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

145.   As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer actual damages.

146.   Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and Class Members pursuant to sections 17203 and 17204 of the Business & Professions Code.

### THIRD CAUSE OF ACTION

(Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1 et seq., and Cal. Com. Code § 2314 on behalf of the California Class)

147.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

148.   Plaintiff Larson brings this cause of action on behalf of herself and the California Class.

149.   Honda was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.  Honda

sold the Class Vehicles to its authorized dealers and distributors knowing that those third parties would resell the vehicles to the end users, Plaintiffs and Class Members.

150.   Defendants provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a VTC Defect that can make driving unreasonably dangerous.

151.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles' VTC Actuator designed, manufactured, supplied, distributed, and sold by Defendant were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles' VTC Actuator would be fit for its intended use while the Class Vehicles were being operated.

152.   Contrary to the applicable implied warranties, the Class Vehicles' VTC Actuator, at the time of sale and thereafter, contained a latent defect— undiscoverable at the time of sale—that renders the vehicles not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, as described more fully above.

153.   Defendants' actions, as complained of herein, breached the implied warranties that the Class Vehicles were of merchantable quality and fit for such use in violation of Cal. Civ. Code §§ 1792 and 1791.1, and Cal. Com. Code § 2314.

## **FOURTH CAUSE OF ACTION**

(Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. Ann. § 6-1-101 et seq., on behalf of the Colorado Class)

154.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

155.   Plaintiff Jauken brings this cause of action on behalf of himself and the Colorado Class.

156.   Honda is a "person" within the meaning of Colo. Rev. Stat. Ann. § 6-1-102(6).

157.   Defendants knew that the Class Vehicles' VTC Actuators suffered from an inherent defect, would fail prematurely and were not suitable for their intended use.

158.   In failing to disclose the VTC Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in a fraudulent business act or practice within the meaning of the CCPA.

159.   Defendants were under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' VTC Actuator because Defendants were in a superior position to know the true state of facts about the material defect in the Class Vehicles' VTC actuators Defendants actively concealed the defective nature of the Class Vehicles' VTC Actuators from Plaintiffs and Class Members at the time of sale and thereafter.

160.   Defendants actively concealed the defective nature of the Class Vehicles' VTC Actuators from Plaintiffs and Class Members at the time of sale and thereafter in order to induce Plaintiffs and Class Members to purchase the Class Vehicles.

161.   The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendants' Class Vehicles, or to pay less for them.   But for Defendants'

concealment, Plaintiffs and Class Members would have known that the Class Vehicles suffered from the VTC Defect and they would not have purchased or leased the Class Vehicles or would have paid less for them.

162. Defendants intended for Honda dealers to omit the existence of the VTC Defect and systematically withheld misinformation about the VTC Defect and informed Honda dealers that the VTC Defect did not affect the Class Vehicle's functioning. Defendants withheld information about the VTC Defect so that Honda dealers would continue to sell the Class Vehicles on terms favorable to Defendants and to minimize warranty claims.

163. Defendants continued to conceal the defective nature of the Class Vehicles and their VTC actuators even after Class Members began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of this systematic problem today.

164. Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public and potential consumers of the Class Vehicles.

165. As a direct and proximate result of Defendants' deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

166. Because Defendants' willful and knowing conduct caused injury to Plaintiffs, Plaintiffs seeks recovery of actual damages, discretionary punitive damages, reasonable attorneys' fees and costs, and an order enjoining Defendants' deceptive conduct, and any other relief that the Court deems just and necessary.

## **FIFTH CAUSE OF ACTION**

(Violation of Connecticut's Deceptive and Unfair Trade Practices Act ("CUTPA") Conn. Gen. Stat. § 42-110b, et seq., on behalf of the Connecticut Class)

167.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

168.   Plaintiff Kadlubowski brings this cause of action on behalf of himself and on behalf of the Connecticut Class.

169.   As described above, Honda sold vehicles to Plaintiff Kadlubowski and Class Members even though the vehicles are materially defective.  Honda failed to disclose its knowledge of the VTC Defect and its attendant risks at the point of sale or otherwise.  Honda's conduct, as described above and below, was unfair and deceptive because withholding and omitting material information about a defective engine component was likely to mislead consumers who were in the process of purchasing and/or leasing the Class Vehicles.

170.   Honda's failure to disclose the VTC Defect was misleading in a material respect because a reasonable consumer would have been misled by Honda's conduct.  Plaintiff and Class Members, as reasonable consumers, did not expect their vehicles to contain the VTC Defect because only Defendants were aware of the defect at the time of sale.

171.   As a direct and proximate result of Honda's unlawful omissions and business practices, Plaintiff Kadlubowski and Class Members lost money or property because they have purchased and leased vehicles that they otherwise would not have, or in the alternative, would have paid less for.  Meanwhile, Honda has sold more Class Vehicles than it otherwise could have and charged inflated prices for the vehicles, unjustly enriching itself thereby.

172.   Honda's deceptive acts and practices were willful and knowing because Honda knew about the VTC Defect in 2011 before it began selling Class Vehicles and chose not to disclose the problem to consumers.

173.   The harm to Plaintiff and Class Members caused by Honda's omissions and other misconduct is not outweighed by any benefit to Plaintiff and Class Members, or to the public—only Honda benefits from its misconduct by receiving additional profits to the detriment of Plaintiff and Class Members.

174.   Pursuant to Conn. Gen. Stat. § 42-110g, Plaintiff and Class Members seek appropriate injunctive relief, recovery of actual damages, and their reasonable costs and attorneys' fees.

## SIXTH CAUSE OF ACTION
(Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") Fla. Stat. § 501.201, et seq., on behalf of the Florida Class)

175.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

176.   Plaintiff Werner brings this cause of action on behalf of himself and on behalf of the Florida Class.

177.   Plaintiff Werner and members of the proposed Florida Class are "consumers" and "interested parties or persons" under the FDUTPA.  Fla. Stat. § 501.203(6) and (7).

178.   Honda is engaged in the conduct of "trade or commerce" as defined by FDUTPA.  Fla. Stat. § 501.203(8).

179.   By failing to disclose and concealing the VTC Defect from Plaintiffs and Class Members, Honda engaged in "unfair or deceptive acts or practices in the conduct of . . . commerce" in violation of Fla. Stat. § 501.204.

180.   Honda's conduct, as described above and below, constitutes a violation of Fla. Stat. § 501.204. Furthermore, Honda's deceptive acts and practices, which were intended to mislead consumers who were in the process of purchasing and/or leasing the Class Vehicles, constitute conduct directed at consumers.

181.   Honda knew that the Class Vehicles suffered from the VTC Defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

182.   In failing to disclose the VTC Defect, Honda knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in deceptive acts or practices within the meaning of the FDUTPA.

183.   Honda's acts and practices, which were intended to result, and which did result, in the sale of defective Class Vehicles, violated the FDUTPA because:

    a. Honda represented that its vehicles had characteristics, uses, or benefits which they do not have;

    b. Honda advertised its goods with intent not to sell them as advertised;

    c. Honda represented that its vehicles are of a particular standard, quality, or grade when they are not;

    d. Honda represented that transactions (i.e., the sale of the Class Vehicles) conferred or involved rights, remedies, or obligations which they do not; and

    e. Honda failed to disclose and concealed material information about its vehicles.

184.   As described above, Honda sold and leased vehicles to proposed Florida Class Members with a known VTC Defect that endangers drivers and materially detracts from the central functionality of the vehicles.  Honda failed to disclose its knowledge of the VTC Defect and its attendant risks at the point of sale or otherwise, realizing that warning about the VTC Defect would dissuade Class Members from purchasing and leasing the vehicles.

185.   Had Honda not concealed and instead adequately disclosed the VTC Defect, Plaintiff Werner and Class Members would not have purchased or would have paid less for their vehicles.

186.   Plaintiffs also assert a violation of public policy arising from Honda's withholding of material safety facts from consumers.   Honda's violation of consumer protection and unfair competition laws resulted in harm to consumers.

187.   Honda's deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

188.   As a direct and proximate result of Honda's deceptive acts or practices, Plaintiff Werner and Florida Class Members have suffered and will continue to suffer actual damages. Because Honda's willful and knowing conduct caused injury to Plaintiff Werner and Class Members, they seek recovery of actual damages, discretionary punitive damages, reasonable attorneys' fees and costs, and an order enjoining Honda's deceptive conduct, and any other just and proper relief available under Fla. Stat § 501.211 and § 501.2105.

## SEVENTH CAUSE OF ACTION

(Violation of Mass. Gen. Laws ch. 93A § 2, et seq., on behalf of Massachusetts Class)

189.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

190.   Plaintiff Martha Velasquez brings this cause of action on behalf of herself and the Massachusetts Class.

191.   The Massachusetts Regulation of Business Practice and Consumer Protection Act prohibits unfair and deceptive acts or practices in the conduct of trade or commerce.  Mass. Gen. Laws L. ch. 93A, § 2(a).

192.   Honda, Plaintiff Velasquez, and Class Members are "persons" within the meaning of ch. 93A, § 1(b).

193.   Honda engaged in "trade" or "commerce" within the meaning of ch. 93A, § 1(b).

194.   Plaintiff Velasquez and Class members are consumers who purchased or leased a Class Vehicle for end use and not for resale.

195.   Defendants' conduct, as described above, in misrepresenting the Class Vehicles' performance, while omitting the facts that Class Vehicles contained defective VTC actuators, constitutes an unfair and deceptive practice and was likely to mislead a reasonable consumer.

196.   A reasonable consumer would consider the quality of the engine components in a Class Vehicle, and defective nature of the VTC, to be important when making a decision whether to purchase a Class Vehicle. The disclosure of the defective VTC would have influenced prospective buyers not to enter into the transaction.

197.   Honda knew before the time of sale to Plaintiff Velasquez and Class Members, or earlier, that Class Vehicles were produced with defective VTCs that posed a threat to drivers, passengers, and everyone else sharing the road with Class Vehicles.  Through consumer complaints, knowledge of design and production of the VTCs, internal product testing, and past experience, Defendant learned of the defect in 2011 at the latest. The existence and ubiquity of the defect is illustrated by the numerous publicized consumer complaints, disputes, and failed remedial measures nationwide.  Defendants' issuance of a series of TSBs directed to Class Vehicles' VTCs and VTCs in prior models and related vehicles shows actual knowledge.

198.   Honda's conduct in refusing to perform the necessary repairs to Plaintiff Velasquez and Class members' Class Vehicles constituted unfair conduct within the meaning of ch. 93A, § 2.

199.   Honda's conduct, as alleged herein, is in violation of at least the following regulations promulgated by the Massachusetts Attorney General under ch. 93A:

a. 940 C.M.R. § 3.02 (prohibiting, among other things, statements or illustrations used in advertisements which create a false impression of the grade, quality, value, or usability of the product offered);

b. 940 C.M.R. § 3.05(1) (prohibiting claims or representations "made by any means concerning a product which, directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect");

c. 940 C.M.R. § 3.08(2) (providing that it "shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligation arising under a warranty"); and

d. 940 C.M.R. § 3.16(2) (providing that it is a violation of ch. 93A, § 2 to "fail to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer to enter into the transaction").

200.   As a direct and proximate result of Honda's unfair and deceptive conduct, as alleged herein, Plaintiff Velasquez and Class Members have suffered injury-in-fact, including the following:

a. Plaintiff Velasquez and Class Members, in purchasing the Class Vehicles, received a car worth less than as represented in that they

paid for a car free of defects, but did not receive that which they paid for;

b. Plaintiff Velasquez and Class Members suffered diminution in value of the Class Vehicles due to the existence of the VTC defect in their Class Vehicles; and

c. Plaintiff Velasquez and Class Members were faced with the choice or repairing their Class Vehicles at substantial cost and inconvenience or being without their vehicles at substantial cost and inconvenience.

201.   As a result of Defendants' unfair and deceptive conduct in violation of ch. 93A, Plaintiff Velasquez and Class Members have suffered actual damages, including the additional cost they paid for a vehicle with a working and defect-free VTC actuator, diminution in value of the Class Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Class Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

202.   Had Plaintiff Velasquez and the other Class members been aware of the omitted and misrepresented facts, i.e., that the Class Vehicles they purchased were defective, could cause catastrophic engine failure, and would cost them several thousands of dollars in repair costs, Plaintiff Velasquez and the other Class members would not have purchased the Class Vehicles or would have paid significantly less for them than they actually paid.

203.   On May 19, 2023, Plaintiff Velasquez sent to Honda a written demand for relief pursuant to ch. 93A, § 9(3).   Honda confirmed receipt but failed to make a reasonable offer of relief in response to the demand.

204.   Pursuant to Mass. Gen. Law, ch. 93A, § 9, Plaintiff Velasquez and Class Members seek monetary relief measured as the greater of (a) actual

damages in an amount to be determined at trial; and (b) statutory damages in the amount of $25 for each violation. Because Honda's conduct was committed willfully and knowingly, Plaintiff Velasquez and  Class members are entitled to recover up to three times their actual damages, but no less than two times actual damages.

205.   Plaintiff Velasquez and Class Members also seek an order directing Honda to correct its violations by repairing or replacing the defective VTCs on all Class Vehicles.

## EIGHTH CAUSE OF ACTION

(Breach of Implied Warranty, Mass. Gen. Laws Ch. 106 § 2-314, et seq., on behalf of the Massachusetts Class)

206.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

207.   Plaintiff Velasquez brings this cause of action on behalf of herself and the Massachusetts Class.

208.   Class Vehicles are "goods" and Honda is a "seller" and "merchant" within the meaning of Mass. Gen. Laws Ch. 106, § 2-314.

209.   Plaintiff Velasquez is the intended user and true consumer of the Class Vehicle that she purchased from an authorized dealership.  She used her vehicle as intended by Honda and in a manner that was foreseeable.  Honda sold the Class Vehicles to its authorized dealers and distributors knowing that those third parties would resell the vehicles to the end users, Plaintiffs and Class Members.

210.   The implied warranty of merchantability included with the sale of each Class Vehicle means that Honda warranted that each Class Vehicle: (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

211.  The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise consumers of the existence of the danger prior to experiencing the VTC Defect firsthand.

Honda's actions have deprived Plaintiff and Class Members of the benefit of their bargain and have caused Class Vehicles to be worth less than what Plaintiff and other Class Members paid.

212.  Plaintiffs and Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so.  Defendants were also on notice of the VTC Defect from, among other sources, the complaints and service requests they received from Class Members and their dealers.

213.  As a direct and proximate result of Honda's breach of implied warranty, Class Members received goods whose condition substantially impairs their value. Plaintiff Velasquez and Class Members have been damaged by the diminished value of their Class Vehicles.

214.  Plaintiff Velasquez and Class Members are entitled to actual damages, including all incidental and consequential damages, resulting from Honda's breach of the implied warranty.

## NINTH CAUSE OF ACTION

(Violation of the Maryland Consumer Protection Act, Md. Code Com. Law §§ 13-101 et seq., on behalf of the Maryland Class)

215.  Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

216.  Plaintiff Caleo brings this cause of action on behalf of herself and the Maryland Subclass.

217.  Honda is a "person" as that term is defined in Md. Code, Commercial Law section 13-101(H).

218.  Plaintiff Caleo, and Class Members, are "consumers" as that term is defined in Md. Code, Commercial Law section 13-101(C)(1).

219.   As described above, Honda sold vehicles to Plaintiff Caleo and Class Members even though the vehicles are defective and pose a safety hazard. Honda failed to disclose its knowledge of the VTC Defect and its attendant risks at the point of sale or otherwise.  Honda had the opportunity to disclose the VTC Defect's existence at the time of sale when Ms. Caleo purchased her Class Vehicle from an authorized Honda dealer.

220.   Honda's deceptive acts and practices were willful and knowing because, as alleged above, Honda has known about the VTC Defect for many years before it began selling Class Vehicles and chose not to disclose the problem to consumers.

221.   Despite its knowledge of the VTC Defect, Honda chose to conceal information about the defect from Plaintiffs and other consumers.   This concealment was misleading and unfair in a material respect because the information concealed, if known, would impact the purchasing decision of a reasonable consumer.  Had Plaintiff Caleo—or any reasonable consumer—been told that the Class Vehicles contained the VTC Defect, they would not have purchased their Class Vehicles or would have paid less for them.

222.   Because Honda did not disclose the VTC Defect, however, Plaintiff Caleo and Class Members have been deprived of the benefit of their bargain and harmed in that they now own defective and unsafe vehicles that have diminished value compared to the non-defective vehicles they intended to purchase.  The VTC is fundamental to the operation of the timing system in in Plaintiffs and Class Members' vehicles; on information and belief, the average cost of a VTC replacement is approximately $500.  This is a cost that Plaintiffs and Class Members will have to bear as the price of continued ownership of a defective vehicle.   The VTC is a critical component that is material to the driver

experience and safety.  The VTC Defect has therefore also diminished the value of Plaintiffs and Class Members' vehicles.

223.   As a direct and proximate result of Honda's deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages unless Honda compensates them for the cost of repair or the Class Vehicles' diminished value.

224.   Because Honda's willful and knowing conduct caused injury to Plaintiffs and Class Members, they seek recovery of actual damages in an amount necessary to repair the VTC Defect in Class Vehicles or compensate them for the diminished value caused by the existence of the VTC Defect, discretionary punitive damages, reasonable attorneys' fees and costs, and an order enjoining Honda's deceptive conduct, and any other just and proper relief available under Md. Code Com. Law §§ 13-101 et seq.

## TENTH CAUSE OF ACTION
(Breach of Implied Warranty, Md. Code Com. Law §§ 2-314, 2-315
On behalf of the Maryland Class)

225.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

226.   Plaintiff Caleo brings this cause of action on behalf of herself and the Maryland Subclass.

227.   Class Vehicles are "goods" and Honda is a "seller" and "merchant" within the meaning of Md. Code Com. Law § 2-314.

228.   The implied warranty of merchantability included with the sale of each Class Vehicle means that Honda warranted that each Class Vehicle (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

229.   The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise Plaintiffs and Class Members of the existence of the danger prior to experiencing failure firsthand.

230.   Honda's actions have deprived Plaintiff and Class Members of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiffs and Class Members paid.

231.   As a direct and proximate result of Honda's breach of implied warranty, Plaintiff and Class Members received goods whose condition substantially impairs their value. Plaintiff and Class Members have been damaged by the diminished value of their Class Vehicles.

232.   Plaintiff and Class Members notified Defendants of the breach within a reasonable time through the filing of the Quackenbush action and/or were not required to do so.  By presenting her vehicle to an authorized Honda dealer to repair the VTC Defect, Plaintiff provided sufficient notice to Honda of the breach of its breached of the implied warranty of merchantability and any further notice would have been futile and has hereby been waived due to Honda's steadfast refusal to acknowledge the VTC Defect in the Class Vehicles and provide an adequate remedy.

233.   Plaintiff Caleo and Class Members are entitled to damages and all incidental and consequential damages resulting from Honda's breach.

## **ELEVENTH CAUSE OF ACTION**

(Violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat., §§ 325F. 68 et seq. ("MPCFA"), on behalf of the Minnesota Class)

234.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

235.   Plaintiff Josephson brings this count on behalf of himself and the members of the Minnesota Class.

236.   Plaintiff, putative class members, and Defendants are persons within the context of the MPCFA, § 325F.68(3).

---

SECOND AMENDED CLASS ACTION COMPLAINT
78

237.  The Vehicles are "merchandise" within the meaning of the MPCFA, Minn. Stat. § 325F.68.

238.  Defendants are engaged in deceptive trade practices within the context of the MPCFA, § 325F.69(1).

239.  Plaintiff and Class Members purchased and/or leased Class Vehicles for personal family or household use.

240.  By failing to disclose and concealing the VTC Defect from Plaintiff and Class Members, Defendants violated the MPCFA.

241.  Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving and did deceive a substantial portion of the purchasing public and imposed a material risk on the public.

242.  Defendants knew that their Class Vehicles suffered from the VTC Defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

243.  Defendants were under a duty to Plaintiff and Class Members to disclose the VTC Defect and repair costs because:

    a.  Defendants were in a superior position to know the true state of facts about the VTC Defect contained in the Class Vehicles;

    b.  Plaintiff and Class Members could not reasonably have been expected to learn or discover that their Honda vehicles have a material defect until after they purchased the Class Vehicles; and

    c.  Defendants knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the VTC Defect.

244.  By failing to disclose the VTC Defect, Defendants have knowingly and intentionally concealed material facts and breached its duty not to do so.

245.   The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase or lease the Class Vehicles, or to pay less for them.  Had Plaintiff and other Class Members known that the Class Vehicles and the VTC actuators were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

246.   Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a VTC Defect.  That is the reasonable and objective consumer expectation for vehicles and their timing systems.

247.   As a result of Defendants' misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their VTC actuators are defective and require repair or replacement.

248.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the other putative Class Members have suffered and will continue to suffer actual damages.

249.   Whereas here, Plaintiff's claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. § 8.31(3a), allows individuals who have been injured through a violation of the MPCFA to bring a civil action and recover damages together with costs and disbursements, including reasonable attorneys' fees.

250.   Therefore, Defendants used unfair methods of competition and unfair or deceptive acts or practices in conducting their business.

251.   Accordingly, through these deceptive statements and misleading omissions, Defendants violated Minn. Stat. § 325F.69 and proximately caused damage to Plaintiff and the Class Members.

252.   Accordingly, Plaintiff seeks damages, reasonable costs and attorneys' fees, an order enjoining the acts and practices described above, and any other relief that the Court deems just and proper.

## TWELFTH CAUSE OF ACTION

(Violation of the Minnesota's False Statement in Advertising Act, Minn. Stat., §§ 325F. 67 et seq., ("FSAA") on behalf of the Minnesota Class)

253.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

254.   Plaintiff Josephson brings this count on behalf of himself and the members of the Minnesota Class.

255.   The FSAA, provides a cause of action to "any person, firm, corporation, or association" who purchases goods or services through advertising which "contains any material assertion, representation, or statement of fact, which is untrue, deceptive, or misleading."

256.   By failing to disclose and concealing the VTC Defect from Plaintiff and Class Members, Defendants violated the FSAA.

257.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving and did deceive a substantial portion of the purchasing public and imposed a material risk on the public.

258.   Defendants knew that their Class Vehicles suffered from the VTC Defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

259.   Defendants were under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles and the associated repair costs because:

a. Defendants were in a superior position to know the true state of facts about the material defect contained in the Class Vehicles;

b. Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles have a material defect until after their purchase; and

c. Defendants knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the VTC Defect.

260.   By failing to disclose the VTC Defect, Defendants have knowingly and intentionally concealed material facts and breached its duty not to do so.

261.   The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase or lease the Class Vehicles, or to pay less for them.  Had Plaintiff and other Class Members known that the Class Vehicles and their VTC actuators were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

262.   Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a VTC Defect.  That is the reasonable and objective consumer expectation for vehicles and their timing systems.

263.   Whereas here, Plaintiff's claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. § 8.31(3a), allows individuals who have been injured through a violation of the FSAA to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

264.   By engaging in the conduct herein, Defendants violated and continues to violate Minn. Stat. § 325F.67 and the similar laws of other states.

265.   As a result of Defendants' misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles are defective and require repair or replacement.

266.   Accordingly, Plaintiff seeks damages, reasonable costs and attorneys' fees, an order enjoining the acts and practices described above, and any other relief that the Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION

(Violation of the Minnesota's Unfair and Deceptive Trade Practices Act, Minn. Stat. §§ 325D. 44 et seq. ("MUDTPA") on behalf of the Minnesota Class)

267.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

268.   Plaintiff Josephson brings this count on behalf of himself and the members of the Minnesota Class.

269.   Plaintiff, Class Members, and Defendants are persons within the context of the MUDTPA, §§ 325D.10 et seq.

270.   By failing to disclose and concealing the defective nature of the Class Vehicles and the VTC Defect from Plaintiff and Class Members, Defendants violated the MUDTPA §§ 325D.44 (5), (7), and (9).

271.   Specifically, Defendants engaged in deceptive trade practices in violation of the MUDTPA by:

    a. Representing that the Class Vehicles had characteristics, uses, and benefits that they did not have in violation of MUDTPA §§ 325D.44 (5).

    b. Representing that the Class Vehicles and the VTC actuator components were of a particular standard or quality when they were, in fact, defective in violation of MUDTPA §§ 325D.44 (7); and

c.   Engaging in conduct which created a misunderstanding among Plaintiff and the putative Class Members as to the quality and longevity of the Class Vehicles and their VTC actuator components.

272.   Minn. Stat. § 325D.13 provides that "no person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

273.   Defendants were under a duty to Plaintiff and Class Members to disclose the defective nature of the VTC Defect and associated repair costs because:

a.   Defendants were in a superior position to know the true state of facts about the material defect contained in the Class Vehicles and the VTC Defect;

b.   Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles VTC actuators have a material defect until after they purchased the Class Vehicles; and

c.   Defendants knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the VTC Defect.

274.   By failing to disclose the VTC Defect, Defendants has knowingly and intentionally concealed material facts and breached its duty not to do so.

275.   The facts concealed or not disclosed by Defendants to Plaintiff and Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase or lease the Class Vehicles, or to pay less for them.  Had Plaintiff and Class Members

known that the Class Vehicles contained the VTC Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them.

276.   Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a VTC Defect.  That is the reasonable and objective consumer expectation for vehicles and their timing system components.

277.   Whereas here, Plaintiff's claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. § 8.31(3a), allows individuals who have been injured through a violation of the MUDTPA to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

278.   By engaging in the conduct herein, Defendants violated and continues to violate the MUDTPA and the similar laws of other states.

279.   As a result of Defendants' misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles VTC actuators are defective and require repair or replacement.

280.   Accordingly, Plaintiff seeks damages, an order enjoining the acts and practices described above, reasonable costs and attorneys' fees, and any other relief that the Court deems just and proper.

## FOURTEENTH CAUSE OF ACTION
(Breach of Implied Warranty, Minn. Stat. §§ 366.2-314-315, on behalf of the Minnesota Class)

281.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

282.   Plaintiff Josephson brings this cause of action on behalf of himself and the Minnesota Class.

283.   The implied warranty of merchantability included with the sale of each Class Vehicle means that Honda warranted that each Class Vehicle (a) would pass without objection in trade under the contract description; (b) was fit

for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

284. The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise Plaintiffs and Class Members of the existence of the danger prior to experiencing failure firsthand.

285. Honda sold the Class Vehicles to its authorized dealers and distributors knowing that those third parties would resell the vehicles to the end users, Plaintiffs and Class Members.

286. Honda's actions have deprived Plaintiff and Class Members of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiff and Class Members paid.

287. As a direct and proximate result of Honda's breach of implied warranty, Plaintiffs and Class Members received goods whose condition substantially impairs their value. Plaintiff Josephson and Class Members have been damaged by the diminished value of their Class Vehicles.

288. Plaintiffs and Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so. Plaintiff Josephson further notified Honda directly of the breach by letter on May 19, 2023.

289. Plaintiff Josephson and Class Members are entitled to damages and all incidental and consequential damages resulting from Honda's breach.

### FIFTEENTH CAUSE OF ACTION

(Violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 et seq., on behalf of the Missouri Class)

290. Plaintiffs re-allege the paragraphs above as if fully set forth herein.

291. Plaintiff Barksdale brings this cause of action individually and on behalf of the Missouri Class.

292. Honda, Plaintiffs and the other Class Members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

293.   By selling the Class Vehicles in Missouri, Honda engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

294.   Honda has been aware of the VTC Defect and its impact on the Class Vehicles performance and safety since at least 2011.

295.   Despite its knowledge of the VTC Defect, Honda chose to conceal information about the defect from Plaintiffs and other consumers.   This concealment was misleading and unfair in a material respect because the information concealed, if known, would impact the purchasing decision of a reasonable consumer.   Had Plaintiff Barksdale—or any reasonable consumer— been told that the Class Vehicles contained the VTC Defect, they would not have purchased their Class Vehicles or would have paid less for them.

296.   Because Honda did not disclose the VTC Defect, however, Plaintiff Barksdale and Class Members have been deprived of the benefit of their bargain and harmed in that they now own defective and unsafe vehicles that have diminished value compared to the non-defective vehicles they intended to purchase.   The VTC is fundamental to the operation of the timing system in in Plaintiffs and Class Members' vehicles; on information and belief, the average cost of a VTC replacement is approximately $500.   This is a cost that Plaintiffs and Class Members will have to bear as the price of continued ownership of a defective vehicle.   The VTC is a critical component that is material to the driver experience and safety.   The VTC Defect has therefore also diminished the value of Plaintiffs and Class Members' vehicles.

## SIXTEENTH CAUSE OF ACTION

(Breach of Implied Warranty of Merchantability, Mo. Rev. Stat. §§ 400.2-314 and 400.2a-212 et seq., on behalf of the Missouri Class)

297.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

298.  Plaintiff Barksdale brings this cause of action individually and on behalf of the Missouri Class.

299.  Honda is and was at all relevant times a merchant with respect to motor vehicles under Mo. Rev. Stat. §§ 400.2-104 and 400.2a-103.

300.  Pursuant to Mo. Rev. Stat. §§ 400.2-314 and 400.2a-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

301.  Because of the VTC Defect, the Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.

302.  Honda was provided notice of the VTC Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. In particular, Honda was provided notice of the VTC Defect, and its breach with respect to Plaintiff Barksdale and the other Class members, through the complaints filed in the Quackenbush action.

303.  Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Honda's breach of the warranty of merchantability.

304.  As a direct and proximate result of Honda's breach of the warranty of merchantability, Plaintiff Barksdale and the other Class members have been damaged in an amount to be proven at trial.

## SEVENTEENTH CAUSE OF ACTION

(Violation of New Jersey's Consumer Fraud Act  ("New Jersey CFA") N.J. Stat. Ann. §§ 56:8-1 et seq., on behalf of the  New Jersey Class)

305.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

306.   Plaintiff Carol Hardifer brings this cause of action on behalf of herself and the New Jersey Class.

307.   The New Jersey CFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2.

308.   As described above, Honda sold vehicles to class members even though the vehicles are defective.  Honda failed to disclose its knowledge of the VTC Defect and its attendant risks at the point of sale or otherwise.  Honda's conduct, as described above and below, constitutes a violation of N.J. Stat. Ann. § 56:8-2.  Honda's conduct occurred during its trade or business, was intended to mislead consumers who were in the process of purchasing and/or leasing the Class Vehicles, and therefore constitutes conduct directed at consumers.

309.   Honda's failure to disclose the VTC Defect was misleading in a material respect because a reasonable consumer would have been misled by Honda's conduct.

310.   Because Plaintiff and Class Members, as reasonable consumers, did not expect their vehicles to contain the VTC defect because only Defendants were aware of the defect at the time of sale.

311.  Honda's deceptive acts and practices were consumer-oriented because they had a broad range impact on consumers at large, affecting all owners and lessees of the Class Vehicles.

312.  As a direct and proximate result of Honda's unlawful methods, acts, and practices, Plaintiff and Class Members lost money or property because they have purchased and leased vehicles that they otherwise would not have, or in the alternative, would have paid less for.  Meanwhile, Honda has sold more Class Vehicles than it otherwise could have and charged inflated prices for the vehicles, unjustly enriching itself thereby.

313.  Honda's deceptive acts and practices were willful and knowing because Honda knew about the VTC defect before it began selling Class Vehicles and chose not to disclose the problem to consumers. Because of internal testing and investigation specifically related to the VTC Defect, Honda knew in 2011 that the VTC Defect could damage critical timing system components and lead to engine failure, a clear safety risk.  Honda actively choose not to disclose not to disclose this information to its dealers or Class Vehicles purchasers.

314.  Pursuant to N.J. Stat. Ann. § 56:8-19., Plaintiff Hardifer and Class Members seek appropriate injunctive relief, recovery of actual damages, treble damages, and their reasonable costs and attorneys' fees. Plaintiffs and Class Members have been deprived of the benefit of their bargain for a defect-free vehicle and therefore suffered an ascertainable loss at the time of sale.  This loss includes the cost of overpayment at the time of sale which, in Quackenbush, the plaintiffs' damages analysis showed, and Honda stipulated, was $544 and $532 for Class Members who purchased their vehicles in Illinois and California, respectively.  Case No. 3:20-cv-05599, Dkt. No. 292 (N.D. Cal. Aug. 1, 2023). Upon information and belief, the diminution in value caused by Honda's failure

to disclose the VTC Defect to Class Members who purchased in New Jersey is comparable to the damages suffered by Illinois and California Class Vehicle purchasers.

315.   Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiff Hardifer will serve the New Jersey Attorney General with a copy of this Consolidated Amended Complaint.

## **EIGHTEENTH CAUSE OF ACTION**

(Breach of Implied Warranty of Merchantability, N.J. Stat. Ann. § 12A:2-314 et seq., on behalf of the New Jersey Class)

316.   Plaintiff re-alleges the paragraphs above as if fully set forth herein.

317.   Plaintiff Carol Hardifer brings this cause of action on behalf of herself and the New Jersey Class.

318.   Honda is a "merchant" in respect to the Class Vehicles under New Jersey law.

319.   The implied warranty of merchantability included with the sale of each Class Vehicle means that Honda warranted that each Class Vehicle (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

320.   The Class Vehicles would not pass without objection in the automotive trade because they contain the above-described VTC Defect, which also makes them unfit for the ordinary purpose for which a Class Vehicle would be used.

321.   The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise Plaintiff and Class Members of the existence of the danger prior to experiencing failure firsthand.

322.   Honda's actions have deprived Plaintiff and Class Members of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiff and other members of the proposed New Jersey Class paid.

323.   Honda sold the Class Vehicles to its authorized dealers and distributors knowing that those third parties would resell the vehicles to the end users, Plaintiffs and Class Members.

324.   As a direct and proximate result of Honda's breach of implied warranty, Plaintiff and Class Members received goods whose condition substantially impairs their value.   Plaintiff and Class Members have been damaged by the diminished value of the Class Vehicles.

325.   Pursuant to N.J. Stat. Ann. § 12A:2-314, et seq. Plaintiff Hardifer and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of Class Vehicles or the overpayment or diminution in value of their Class Vehicles. They are also entitled to all incidental and consequential damages resulting from Honda's breach, as well as reasonable attorneys' fees and costs.

### NINETEENTH CAUSE OF ACTION
(Violation of the New York General Business Law ("GBL"), N.Y. Gen. Bus. Law § 349, on behalf of the New York Class)

326.   Plaintiffs re-alleges the paragraphs above as if fully set forth herein.

327.   Plaintiffs D'Amato and Korman brings this cause of action on behalf of himself and the Nationwide Class or, alternatively, the New York Class.

328.   Plaintiffs and Class Members are "persons" under N.Y. Gen. Bus. Law § 349(g).

329.   Honda is a "person," "firm," "corporation" or "association" under N.Y. Gen. Bus. Law § 349(g).

330.   As described above, Honda sold vehicles to Plaintiffs D'Amato and Korman, and to and Class Members, even though the vehicles are defective and pose a safety risk, and failed to disclose its knowledge of the VTC Defect and its attendant risks at the point of sale or otherwise.

331.   Honda's failure to disclose the VTC Defect was misleading in a material respect because a reasonable consumer would have been misled by Honda's conduct and failure to disclose the VTC Defect.   A reasonable consumer would not purchase a vehicle containing the VTC Defect.

332.   Honda's deceptive acts and practices were consumer-oriented because they had a broad range impact on consumers at large, affecting all owners and lessees of Class Vehicles.

333.   As a direct and proximate result of Honda's unlawful methods, acts, and practices in failing to disclose the VTC Defect, Plaintiffs and Class Members lost money or property because they have purchased and leased vehicles that they otherwise would not have, or in the alternative, would have paid less for.  Meanwhile, Honda has sold more Class Vehicles than it otherwise could have and charged inflated prices for the vehicles, unjustly enriching itself thereby.

334.   Honda's deceptive acts and practices were willful and knowing because Honda, despite its knowledge since at least 2011 that the Class Vehicles contain the VTC Defect and that the VTC Defect can cause the timing system to fail, began selling Class Vehicles and chose not to disclose the problem to consumers.

335.   Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs D'Amato and Korman, and Class Members seek appropriate injunctive relief, recovery of actual damages, treble damages, and their reasonable costs and attorneys' fees.

## **TWENTIETH CAUSE OF ACTION**

(Violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq., on behalf of the North Carolina Class)

336.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

337.   Plaintiff Carol Allen brings this cause of action on behalf of herself and the North Carolina Class.

338.   North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat §§ 75.1.1 ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]"   The NCUDTPA provides a right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of the provisions" of the Act.  N.C. Gen. Stat. §§ 75-16.

339.   As described above, Honda sold vehicles to Class Members even though the vehicles are defective.  Honda failed to disclose its knowledge of the VTC Defect and its attendant risks at the point of sale or otherwise.

340.   Honda had the opportunity to disclose the VTC Defect in 2014 at the time of sale when Ms. Allen purchased her Class Vehicle at Crown Honda in Raleigh, North Carolina.  Honda could have disclosed the defect through Crown Honda, on the Monroney sticker, or in the 2014 Honda CR-V press kit or other literature that accompanied the Class Vehicles.

341.   Honda's conduct occurred in the course of its trade or business and thus occurred in or affected "commerce" as defined in N.C. Gen. Stat. § 75-1.1(b).

342.   Honda's deceptive acts and practices were consumer-oriented because they had a broad-range impact on consumers at large, affecting all owners and lessees of the Class Vehicles.

343.   As a direct and proximate result of Honda's unlawful methods, acts, and practices, Plaintiff Allen and Class Members lost money or property because they have purchased and leased vehicles that they otherwise would not have, or would have paid less for; and that they have paid to repair or that require repairs. Meanwhile, Honda has sold more Class Vehicles than it otherwise could have and charged inflated prices for the vehicles, unjustly enriching itself.

344.   Honda's deceptive acts and practices were willful and knowing because, as alleged above, it knew about the VTC Defect for many years before it began selling Class Vehicles and chose not to disclose the problem to consumers.

345.   Despite its knowledge of the VTC Defect, it chose to conceal information about the defect from Ms. Allen and other consumers.  This concealment was misleading and unfair in a material respect because a reasonable consumer would have been misled by Honda's conduct.  Had Ms. Allen—or any reasonable consumer—been told that the Class Vehicles contained the VTC Defect, she would not have purchased her Honda CR-V.

346.   Pursuant to N.C. Gen. Stat. § 75-16 and § 75-16.1, Plaintiff Allen and other members of the proposed North Carolina Class seek appropriate injunctive relief, recovery of actual damages, treble damages, and their reasonable costs and attorneys' fees.

## **TWENTY-FIRST CAUSE OF ACTION**
(Negligence on behalf of the Ohio Class)

347.   Plaintiffs reallege the paragraphs as if fully set forth herein.

348.   Plaintiff Catherine Davis brings this cause of action on behalf of herself and tthe Ohio Class.

349.   Honda had a duty to design and manufacture a product that would be safe for its intended and foreseeable uses and users, including the use to which

its products were put by Plaintiff and Class Members. Honda breached its duties to Plaintiff and Class Members because it was negligent in the design, development, manufacture, and testing of VTC actuators as installed in Class Vehicles, and Honda is responsible for this negligence.

350.   Honda was negligent in the design, development, manufacture, and testing of VTC Actuators installed in the Class Vehicles because it knew, or in the exercise of reasonable care should have known, that the vehicles equipped with defective VTC actuators pose an unreasonable risk of serious bodily injury to Plaintiff and the other class members, other motorists, pedestrians, and the public at large.

351.   A finding that Honda owed a duty to Plaintiffs and other class members would not significantly burden Honda.

352.   As a direct, reasonably foreseeable, and proximate result of Honda's failure to exercise reasonable care to inform Plaintiffs and Class Members about the Defect or to provide appropriate repair procedures for it, Plaintiff and Class Members have suffered damages in that they spent more money than they otherwise would have on Class Vehicles which are of diminished value.

353.   Plaintiff and Class Members could not have prevented the damages caused by Honda's negligence through the exercise of reasonable diligence. Neither Plaintiff nor the Ohio Class contributed in any way to Honda's failure to provide appropriate notice and repair procedures.

354.   Plaintiff and the Ohio Class seek to recover the damages caused by Honda. Because Honda acted fraudulently and with wanton and reckless misconduct, Plaintiff also seeks an award of punitive damages.

## TWENTH-SECOND CAUSE OF ACTION
(Breach of Implied Warranty, Ohio Rev. Code Ann. § 1302.27,
on behalf of the Ohio Class)

355.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

356.   Plaintiff Catherine Davis brings this cause of action on behalf of herself and the Ohio Class.

357.   The implied warranty of merchantability included with the sale of each Class Vehicle means that Honda warranted that each Class Vehicle (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

358.   The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise Plaintiffs and Class Members of the existence of the danger prior to experiencing failure firsthand.

359.   Honda's actions have deprived Plaintiff and Class Members of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiff and Class Members paid.

360.   As a direct and proximate result of Honda's breach of implied warranty, Plaintiffs and Class Members received goods whose condition substantially impairs their value. Plaintiff Davis and Class Members have been damaged by the diminished value of their Class Vehicles.

361.   Plaintiffs and Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so.  Plaintiff Davis notified Honda directly of the breach by letter on May 19, 2023.

362.   Plaintiff Davis and Class Members are entitled to damages and all incidental and consequential damages resulting from Honda's breach.

## TWENTY-THIRD CAUSE OF ACTION
(Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1, et seq., on behalf of the Pennsylvania Class)

363.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

364.   Plaintiff Reiser brings this cause of action on behalf of herself and the Pennsylvania Class.

365.   Defendants knew that the Class Vehicles' VTC Actuator suffered from an inherent material defect, would fail prematurely and were not suitable for their intended use.

366.   Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles' VTC Actuator and the associated repair costs because:

    a. Defendants were in a superior position to know the true state of facts about the material defect contained in the Class Vehicles' VTC Actuators;

    b. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their VTC Actuators have a material defect until after they purchased the Class Vehicles;

    c. Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the VTC Defect; and

    d. Defendants actively concealed the defective nature of the Class Vehicles' VTC Actuators from Plaintiffs and Class Members at the time of sale and thereafter.

367.   By failing to disclose the VTC Defect, Defendants knowingly and intentionally concealed material facts regarding the VTC Defect and breached their duty not to do so.

368.   The facts concealed or not disclosed by Defendants to Plaintiffs and Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them.  Had Plaintiffs and other Class Members

known that the Class Vehicles' VTC Actuator was defective, they would not have purchased the Class Vehicles or would have paid less for them.

369.   Plaintiffs and Class Members are reasonable consumers who do not expect that their vehicles will suffer from a VTC Defect.

370.   As a direct and proximate result of Defendants' unfair or deceptive acts and practices, Plaintiffs and Class Members justifiably relied on Defendants' misrepresentations and omissions, have been harmed and have suffered and will continue to suffer actual damages in that the Class Vehicles and their VTC Actuators are defective and require repairs or replacement.  The Class Vehicles are worth less than they would be if they had a non-defective VTC Actuator.

371.   Plaintiffs seek actual damages, restitution, statutory and punitive damages, attorney fees, costs, and any other relief that the Court deems just and necessary due to Defendants' failure to rectify or agree to adequately rectify its violations as detailed above.

## TWENTY-FOURTH CAUSE OF ACTION

(Breach of Implied Warranty, Pa. Cons. Stat. §§ 2314-2315, on behalf of the Pennsylvania Class)

372.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

373.   Plaintiff Reiser brings this cause of action on behalf of herself and the Pennsylvania Class.

374.   The implied warranty of merchantability included with the sale of each Class Vehicle means that Honda warranted that each Class Vehicle (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

375.   The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise Plaintiffs and Class Members of the existence of the danger prior to experiencing failure firsthand.

376.   Honda's actions have deprived Plaintiff and Class Members of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiff and Class Members paid.

377.   As a direct and proximate result of Honda's breach of implied warranty, Plaintiffs and Class Members received goods whose condition substantially impairs their value. Plaintiff Reiser and Class Members have been damaged by the diminished value of their Class Vehicles.

378.   Plaintiffs and Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so. Plaintiff Reiser further notified Honda directly of the breach by letter on February 28, 2022.

379.   Plaintiff Reiser and Class Members are entitled to damages and all incidental and consequential damages resulting from Honda's breach.

## TWENTY-FIFTH CAUSE OF ACTION

(Violation of Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus. & Com. Code § 17.565 et seq. ("UCL") on behalf of the Texas Class)

380.   Plaintiffs Sungwon Han and Arika Kuhlmann hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

381.   Plaintiffs bring this cause of action on behalf of themselves and the Texas Class.

382.   On February 25, 2022, Plaintiff Han, on behalf of himself and all individuals residing in Texas who purchased or leased a Class Vehicle, made a demand on Defendants pursuant to Tex. Bus. & Com. Code § 17.505. Defendants acknowledged Mr. Han's demand on April 1, 2022.

383.   On May 19, 2023, Plaintiff Kuhlmann, on behalf of herself and all individuals residing in Texas who purchased or leased a Class Vehicle, made a demand on Defendants pursuant to Tex. Bus. & Com. Code § 17.505.

384.   Plaintiffs and Class Members are consumers as defined by Tex. Bus. & Com. Code. § 17.565 because they are individuals or entities who purchased the Class Vehicles.

385.   Defendants violated the TDTPA by (1) failing to disclose the VTC Defect and (2) breaching implied warranties that apply to the Class Vehicles under Texas law.

## A.   Defendants violated the TDTPA by failing to disclose the VTC Defect

386.   Defendants knew that the Class Vehicles' VTC Actuators suffered from an inherent defect, was defectively designed and/or manufactured, would fail prematurely, and was not suitable for its intended use.

387.   Defendants were under a duty to Plaintiffs and the other Class Members to disclose the defective nature of the Class Vehicles' VTC Actuators because Defendants were in a superior position to know the true state of facts about the material defect contained in the Class Vehicles' VTC Actuators. Plaintiffs and the Class Members, moreover, could not reasonably have been expected to learn or discover that their VTC Actuators have a material defect until after they purchased the Class Vehicles.

388.   Defendants actively concealed the defective nature of the Class Vehicles' VTC Actuators from Plaintiffs and Class Members at the time of sale and thereafter.  Defendants had the opportunity to disclose the existence of the VTC Defect to Plaintiffs Han and Kuhlmann on the Monroney stickers that they viewed on the day that they purchased their Honda vehicles and when they spoke to the respective dealer representatives.

389.   Defendants intended for Honda dealers to omit the existence of the VTC Defect and systematically withheld misinformation about the VTC Defect and informed Honda dealers that the VTC Defect did not affect the Class Vehicle's functioning.  Defendants withheld information about the VTC Defect so that Honda dealers would continue to sell the Class Vehicles on terms favorable to Defendants and to minimize warranty claims.

390.   The facts concealed or not disclosed by Defendants to Plaintiffs and Class Members are a substantial factor in causing Plaintiffs' harm because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendants' Class Vehicles, or to pay less for them.

391.   Plaintiffs and other Class Members relied on Defendants' failure to disclose to their detriment.  Had they known that the Class Vehicles suffered from the VTC Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

392.   Defendants continued to conceal the defective nature of the Class Vehicles and their VTC Actuators even after Class Members began to report problems.  Indeed, Defendants continue to cover up and conceal the true nature of this systematic problem today.

393.   Plaintiffs are informed and believe, and based thereon allege, that despite its knowledge of the VTC Defect, Honda rolled out the Class Vehicles without disclosing the problem to meet its own internal schedules and revenue goals.  The utility of this self-serving conduct, which only benefits Honda and serves no public good, is greatly outweighed by the gravity of the potential harm to consumers.

**B.    Defendants violated the TDTPA by breaching implied warranties that apply to the Class Vehicles pursuant to Tex. Bus. & Com. Code §§ 17.50(a)(2) and 2.314**

394.   Defendants provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a VTC Defect that can make driving unreasonably dangerous.

395.   Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

396.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles' VTC Actuator designed, manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles' VTC Actuator would be fit for its intended use while the Class Vehicles were being operated.

397.   Contrary to the applicable implied warranties, the Class Vehicles' VTC Actuator, at the time of sale or lease and thereafter, was not fit for its ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, as described more fully above.

398.   By breaching the implied warranties that the Class Vehicles were of merchantable quality and fit for such use, Defendants violated of the TDTPA, Tex. Bus & Com. Code § 17.50(a)(2).

399.   Because of Defendants' violations of the TDTPA, Plaintiffs and Class Members are entitled to economic damages in an amount to be determined

at trial, an order enjoining further violations of the TDTPA, attorney fees and costs, and any further relief the Court deems just and necessary.

## <u>TWENTY-SIXTH CAUSE OF ACTION</u>

(Breach of Implied Warranty, Tex. Bus. & Com. Code §§ 2.314, 315, on behalf of the Texas Class)

400.  Plaintiffs re-allege the paragraphs above as if fully set forth herein.

401.  Plaintiffs Han and Kuhlmann bring this cause of action on behalf of themselves and the Texas Class.

402.  Plaintiffs are the intended users and true consumers of the Class Vehicles that they purchased from an authorized dealership.  They used their vehicles as intended by Honda and in a manner that was foreseeable.

403.  The implied warranty of merchantability included with the sale of each Class Vehicle means that Honda warranted that each Class Vehicle: (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

404.  The Class Vehicles are not adequately labeled because their labeling fails to disclose the VTC Defect and does not advise consumers of the existence of the danger prior to experiencing the VTC Defect firsthand.

405.  Honda's actions have deprived Plaintiffs and Class Members of the benefit of their bargain and have caused Class Vehicles to be worth less than what Plaintiffs and other Class Members paid.

406.  As a direct and proximate result of Honda's breach of implied warranty, Class Members received goods whose condition substantially impairs their value. Plaintiffs and Class Members have been damaged by the diminished value of their Class Vehicles.

Plaintiffs and Class Members are entitled to actual damages, including all incidental and consequential damages, resulting from Honda's breach of the implied warranty.

## TWENTY-SEVENTH CAUSE OF ACTION

(Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code. Ann. § 19.86.020 et seq., on behalf of the the Washington Class)

407.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

408.   Plaintiff Ric Heaton brings this cause of action on behalf of himself and the Washington Class.

409.   Honda is a "person" within the meaning of Wash. Rev. Code. Ann. § 19.86.010(1).

410.   Defendants knew that the Class Vehicles' VTC Actuators suffered from an inherent defect, would fail prematurely and were not suitable for their intended use.

411.   In failing to disclose the VTC Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in a fraudulent business act or practice within the meaning of the WCPA.

412.   Defendants were under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' VTC Actuator because Defendants were in a superior position to know the true state of facts about the material defect in the Class Vehicles' VTC actuators Defendants actively concealed the defective nature of the Class Vehicles' VTC Actuators from Plaintiffs and Class Members at the time of sale and thereafter.

413.   Defendants actively concealed the defective nature of the Class Vehicles' VTC Actuators from Plaintiffs and Class Members at the time of sale and thereafter in order to induce Plaintiffs and Class Members to purchase the Class Vehicles.  Defendants had the opportunity to disclose the existence of the

Defect when Plaintiff Heaton purchased his Class Vehicle from Lynnwood Honda in 2013.  Defendants could have disclosed the existence of the defect by noting or disclaiming its existence on the Monroney sticker, through the dealer sales representative, in the 2013 Honda CR-V press kit, or in other media or advertising.

414.   The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendants' Class Vehicles, or to pay less for them.   But for Defendants' concealment, Plaintiffs and Class Members would have known that the Class Vehicles suffered from the VTC Defect and they would not have purchased or leased the Class Vehicles or would have paid less for them.

415.   Defendants intended for Honda dealers to omit the existence of the VTC Defect and systematically withheld misinformation about the VTC Defect and informed Honda dealers that the VTC Defect did not affect the Class Vehicle's functioning.  Defendants withheld information about the VTC Defect so that Honda dealers would continue to sell the Class Vehicles on terms favorable to Defendants and to minimize warranty claims.

416.   Defendants continued to conceal the defective nature of the Class Vehicles and their VTC actuators even after Class Members began to report problems.  Indeed, Defendants continue to cover up and conceal the true nature of this systematic problem today.

417.  Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public and potential consumers of the Class Vehicles.

418.   As a direct and proximate result of Defendants' deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

419.   Because Defendants' willful and knowing conduct caused injury to Plaintiffs, Plaintiffs seeks recovery of actual damages, discretionary punitive damages, reasonable attorneys' fees and costs, and an order enjoining Defendants' deceptive conduct, and any other relief that the Court deems just and necessary.

## **TWENTY-EIGHTH OF ACTION**

**(Breach of Implied Warranty, R.C.W. §§ 62A.2-314 and 62A.2-315 on behalf of the Washington Class)**

420.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

421.   Plaintiff Ric Heaton brings this cause of action on behalf of himself and the Washington Class.

422.   Plaintiff and Class Members are the intended users and true consumers of the Class Vehicle that they purchased from  authorized Honda dealerships.  Like all auto manufacturers who distribute their vehicles through authorized dealers, Honda sold the Class Vehicles to its dealers knowing and expecting that the dealers would then resell the vehicles to third-party beneficiaries, Plaintiffs and Class Members. The very purpose of the Honda-dealer transaction is to facilitate the sale to the ultimate end-users of the vehicles.

423.   Plaintiffs and Class Members uses their vehicles as intended by Honda and in a manner that was foreseeable.

424.   The implied warranty of merchantability included with the sale of each Class Vehicle means that Honda warranted that each Class Vehicle: (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

425.   The Class Vehicles are not adequately labeled because their labeling fails to disclose the VTC Defect and does not advise consumers of the existence of the danger prior to experiencing the VTC Defect firsthand.

426.   Honda's actions have deprived Plaintiff and Class Members of the benefit of their bargain and have caused Class Vehicles to be worth less than what Plaintiff and other Class Members paid.

427.   As a direct and proximate result of Honda's breach of implied warranty, Class Members received goods whose condition substantially impairs their value. Plaintiffs and Class Members have been damaged by the diminished value of their Class Vehicles.

428.   Plaintiffs and Class Members are entitled to actual damages, including all incidental and consequential damages, resulting from Honda's breach of the implied warranty.

## <u>TWENTY-NINETH CAUSE OF ACTION</u>

(Unjust enrichment on behalf of the California, Colorado, Connecticut, Florida, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, North Carolina, Pennsylvania, Texas and Washington Classes)

429.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

430.   Plaintiffs bring this cause of action on behalf of themselves and the Colorado, Connecticut, Florida, Massachusetts, New Jersey, Ohio, Pennsylvania, Texas and Washington Classes.

431.   As described above, Defendants sold the Class Vehicles to Plaintiffs and Class Members even though the vehicles suffered from the VTC Defect.   Defendants failed to disclose the VTC Defect at the t of sale or following the sale of the Class Vehicles.

432.   As a result of their fraudulent acts and omissions related to the VTC Defect, Defendants charged Plaintiffs and Class Members more than it otherwise

could have for Class Vehicles, obtaining monies which rightfully belong to Plaintiffs and Class Members.

433.   It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

434.   Defendants' retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

435.   Each Plaintiff and the proposed Classes are entitled to restitution of the profits that Defendants unjustly obtained, plus interest.

## THIRTIETH CAUSE OF ACTION

(Fraudulent Omission on behalf of the California, Colorado, Connecticut, Florida, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas and Washington Classes)

436.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

437.   Plaintiffs bring this cause of action on behalf of themselves and the California, Colorado, Connecticut, Florida, Massachusetts, New Jersey, New York, Ohio, Pennsylvania, Texas, and Washington Classes.

438.   Defendants knew that the Class Vehicles' VTC Actuator was defectively designed and/or manufactured, would fail, and was not suitable for its intended use.

439.   Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their VTC Actuator.

440.   Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' VTC Actuator because:

a. Defendants were in a superior position to know the true state of facts about the material defect contained in the Class Vehicles' VTC Actuator;

b. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their VTC Actuator has a material defect until after they purchased the Class Vehicles;

c. Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the VTC Defect; and

d. Defendants actively concealed the defective nature of the Class Vehicles' VTC Actuator from Plaintiffs and Class Members at the time of sale and thereafter.

441.   The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay less for them.  Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles' VTC Actuator, they would not have purchased or leased the Class Vehicles, or would have paid less for them.

442.   Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' VTC Actuator in order to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on Defendants' omissions to their detriment.  This detriment is evident from Plaintiffs and Class Members' purchase or lease of Defendants' defective Class Vehicles.

443.   Defendants continued to conceal the defective nature of the Class Vehicles' VTC Actuator even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

444. As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

## **RELIEF REQUESTED**

445. Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, and issue an order providing the following relief:

a. That Defendants provide notice, in a form pre-approved by the counsel identified below, to all current owners or lessees of the Class Vehicles in the United States and in the said notice offer to replace the defective VTC Actuator and any related component parts contained in every Class Vehicle with a non-defective VTC Actuator and component parts;

b. That Defendants provide notice, in a form pre-approved by the counsel identified below, to all current and subsequent owners and lessees of the Class Vehicles in the United States and in the said notice extend the warranty for all of the Class Vehicles' parts, components or systems that constitute the VTC Actuator, or that bear upon or are impacted by the VTC Defect, applicable to both original and subsequent purchasers of every Class Vehicle in the United States;

c. That Defendants offer to reimburse all current and former owners and lessees in the United States who have purchased or leased the Class Vehicles, all expenses already incurred as a result of the VTC Defect, including repairs, diagnostics, and any other consequential and incidental damages (for example, towing charges, vehicle rentals, etc.);

d. That Defendants immediately cease the sale and lease of the Class Vehicles at all authorized Honda dealerships in the United States without first notifying the purchasers of the VTC Defect, and otherwise immediately cease to engage in the violations of law as set forth above;

e. Damages and restitution in an amount to be proven at trial;

f. An order certifying the proposed Class and Classes, designating Plaintiffs as named representatives of the Classes, and designating the undersigned as Class Counsel;

g. A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles' VTC Actuator

h. Provide any and all remedies available pursuant to the consumer protection and common law fraud laws of California, Colorado, Connecticut, Florida, Massachusetts, Minnesota, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas and Washington;

i. An award to Plaintiffs and the Classes of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

j. A declaration that Defendants must disgorge, for the benefit of the Classes, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, and/or make full restitution to Plaintiffs and Class Members;

k. An award of attorneys' fees and costs, as allowed by law;

l. An award of pre-judgment and post-judgment interest, as provided by law;

m. Leave to amend the Complaint to conform to the evidence produced at trial; and

n. Such other relief as may be appropriate under the circumstances.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  September 30, 2024

**GREENSTONE LAW APC**

By:  *s/ Mark S. Greenstone*
Mark S. Greenstone (SBN 199606)
Benjamin N. Donahue (*pro hac vice forthcoming*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
Email:mgreenstone@greenstonelaw.com

**GLANCY PRONGAY & MURRAY LLP**
Kevin F. Ruf (SBN 136901)
Marc L. Godino (SBN 182689)
David J. Stone (SBN 208961)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: kruf@glancylaw.com
Email: mgodino@glancylaw.com
Email: dstone@glancylaw.com

*Attorneys for Plaintiff*

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On September 30, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 30, 2024.


          */s/ Mark S. Greenstone*
          Mark S. Greenstone